**LAW OFFICES OF G. AARON JAMES**
6 Hunt Street
#336
Rumson New Jersey 07760
Telephone: (732) 291-5143
Facsimile:  (732) 291-5146
*Attorneys for Plaintiffs*
*Mitchell Nelson, Sarah E. Hearn-Nelson, Paulina Giraldo-James*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF NEW JERSEY**

| | |
|---|---|
| MITCHELL NELSON, SARAH E. HEARN-NELSON, PAULINA GIRALDO-JAMES;<br><br>Plaintiffs,<br>v.<br><br>DON CLAUSSEN; DEREK DEBREE; MARISHA BARLATIER SIROIS; JULIE SWARTWOOD; LESLIE KRAUSE; LYNN MACCIA; ROBERT KELLNER; MONROE JASON MOYER; MATT MACCIA; WILLIAM S. RUSTICO; WILLIAM SCHREIBER; KRISTINE L. CLAUSSEN; ADAM SIROIS; RAVI SARMA; TERESA KELLNER; CRAIG RENAUER; SUSAN GLASS; MONMOUTH HILLS, INC.; ARIADNE GOERKE; MARGUERITE ANN GOERKE DOWNEY; CAROL ANN GOERKE TAYLOR; NANCY GOERKE BELL; LELAND CLAYTON CURRIER; WILLIAM FRANK CURRIER; LOUISE KRINSKY; ACCESS PROPERTY MANAGEMENT, INC.; FOX & ROACH LP D/B/A BERKSHIRE HATHAWAY HOMESERVICES FOX & ROACH, REALTORS; OCEANFIRST FINANCIAL CORPORATION; TRIDENT ABSTRACT TITLE AGENCY; MORGAN ENGINEERING LLC; LAUREN PLUMP, DAVE VON STEENBURG; JOHN/JANE DOES 1-15, fictitious individuals to be named after discovery; and ABC CORPS. 1-5, fictitious business entities to be named after discovery;<br><br>Defendants. | Docket No.: 2:23-cv-01896<br><br><br><br>**FIRST AMENDED COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiffs Mitchell Nelson, Sarah E. Hearn-Nelson, and Paulina Giraldo-James ("***Plaintiffs***"), by way of this First Amended Complaint against Defendants Don Claussen, Derek

Debree, Marisha Barlatier Sirois, Julie Swartwood, Leslie Krause, Lynn Maccia, Robert Kellner, Monroe Jason Moyer, Matt Maccia,  William S. Rustico, William Schreiber, Kristine L. Claussen, Adam Sirois, Ravi Sarma, Teresa Kellner, Craig Reinauer, Susan Glass, Monmouth Hills, Inc., Ariadne Goerke, Marguerite Ann Goerke Downey, Carol Ann Goerke Taylor, Nancy Goerke Bell, Leland Clayton Currier, William Frank Currier, Access Property Management, Inc., Louise Krinsky, Fox & Roach LP d/b/a Berkshire Hathaway HomeServices Fox & Roach, Realtors, OceanFirst Financial Corporation,  Trident Abstract Title Agency,  Lauren Plump, Dave von Steenburg; Morgan Engineering LLC, John/Jane Does 1-15, and ABC Corporations 1-5 (collectively, "***Defendants***"), hereby state:

## <u>NATURE OF THE ACTION</u>

1.      This case involves a series of racketeering and other fraudulent schemes, tortious conspiracies, breach of fiduciary duties, usurpation of corporate opportunities, self-dealing, tortious interference, detrimental reliance, retaliation, harassment (racial and otherwise), negligence, forgery, extortion, witness tampering, misuse of corporate assets, intentional infliction of emotional distress, and seeks damages and equitable relief from Defendants.

2.      Plaintiffs are recent homebuyers in the Monmouth Hills Historical District ("***Water Witch***") of the Township of Middletown, New Jersey ("***Middletown***"). They are all each either Jewish (Plaintiff Mitchell Nelson), a non-US citizen (Plaintiff Sarah E. Hearn-Nelson), and Latina (Plaintiff Paulina Giraldo-James), whose partner and father of her only child is African American.

3.      The two couples purchased adjoining property in Water Witch (i) the Nelsons in September 2017 and (ii) Giraldo-James in December 2020. Prior to the 1981 subdivision, the two lots formed the substantial estate owned by the Goerke family, owners of the department store chain of the same name (the "***Goerke Estate***"). Other notable owners of the same estate include the Schwab family (securities trading), the Pemberton family (railroad industrialist), and the Goodrich family (tire manufacturer).

4.      The original six story residence of the Goerke Estate is prominently situated at the entrance of Water Witch, has a historic in-ground pool and tennis court, is over 50% larger than

the second largest home in Water Witch, and is the most expensive property ever purchased in Water Witch. It is the crown jewel of Water Witch, and its new owners have black and brown skin.

5.      The 32 28 named Defendants are Defendant Monmouth Hills, Inc. ("**MHI**") and (i) all four of its current officers (Defendants Don Claussen, Derek DeBree, Marisha Barlatier Sirois, Julie Swartwood, collectively "***Current Officer Defendants***"); (ii) six of its recently former officers and directors (Defendants Leslie Krause, Robert Kellner, Monroe Jason Moyer, Matt Maccia, William S. Rustico, and William Schreiber, collectively "***Former Director Defendants***"); (iii) one of its former corporate committee chairpersons (Defendant Kristine L. Claussen) (iv) five of its non-officer/non-director shareholders (Defendants Lynn Maccia, Teresa Kellner, Adam Sirois, Ravi Sarma, and Craig Renauer, collectively "***Shareholder Defendants***"); (v) one non-homeowner and non-shareholder who is the live-in companion of another shareholder (Defendant Susan Glass); (vi) six former residents of the Georke Estate and/or heirs to the former owners of the Georke Estate who recently executed deeds and other agreements claiming to transfer rights to property previously deeded to Plaintiffs (Defendants Ariadne Goerke, Marguerite Ann Goerke Downey, Carol Ann Goerke Taylor, Nancy Goerke Bell, Leland Clayton Currier, William Frank Currier, collectively "***Goerke Defendants***"); and (vii) eight vendors (Defendants Access Property Management, Inc., Louise Krinsky, Fox & Roach LP d/b/a Berkshire Hathaway HomeServices Fox & Roach, Realtors, OceanFirst Financial Corporation, Trident Abstract Title Agency, Morgan Engineering and Surveying, Lauren Plump, Dave Von Steenberg collectively "***Vendor Defendants***").

6.      The Defendants are engaged in a criminal enterprise that commits witness tampering, extortion, retaliation, racketeering, fraud via mail, email, video-conferencing, and other means; all to:

(a) extract hundreds of thousands of dollars in "fees" from homeowners annually for "services" to which they are otherwise entitled as full rate taxpayers of Middletown, by fraudulently claiming such homeowners are subject to a "homeowners' association" that holds a "Master Deed" over their real property whereas MHI is, in fact, a for-profit real estate development corporation;

(b) conceal to avoid criminal and civil penalties for the willful conduct and wanton disregard for public safety caused by the catastrophic deterioration and failure of the 127-year-old dirt roadway system of Water Witch (the "***Dirt Roads of Water Witch***") that cause major flash flooding downhill in the neighboring Borough of Highlands ("***Highlands***") resulting in major vehicular accidents on and the regular closure of New Jersey State Highway Route #36;

(c) conceal from shareholders of MHI the results of (i) the investigations by the New Jersey Department of Environmental Protection ("NJDEP") that was initiated by a 2019 complaint filed by Highlands against MHI, and (ii) a study by MHI's own engineers that the Dirt Roads of Water Witch are "dangerous" and responsible for discharging annually 170 tons of road materials into the Sandy Hook Bay, which are "waters of the United States;"

(d) engage in self-dealing by usurping corporate opportunities and profits owned by MHI and diverting them to shell companies owned by directors, officers and shareholders in their individual capacity;

(e) deceive homeowners of Water Witch into dedicating the real property they hold in fee simple to a non-existent "Master Deed" by acknowledging, by way of a fraudulent shareholder vote, the existence of a "Master Deed;"

(f) retaliate against Plaintiffs, who agreed to cooperate with and give evidence to the NJDEP that instantly resulted in the issuance of a Notice of Violation against MHI in May 2022, by arranging to divert the pollution that MHI had

been discharging toward Highlands and the waters of the United States for over twenty years, to land owned by and uphill from the homes of Plaintiffs, thereby creating a serious flood hazard to their properties;

(g) deceive Highlands, which has applied for $16 million of federal funds made available in the form of a grant by the Federal Emergency Management Agency ("FEMA"), to use such funds to assist MHI, which is not a participant in the National Flood Insurance Program ("NFIP") and not identified by FEMA as being in a high-, moderate-, or low-risk flood area, to commit environmental racism against Plaintiffs, who are full rate taxpayers of Middletown and not Highlands;

(h) perpetuate against Plaintiffs its historic practices of discrimination and harassment of protected classes, which was (i) codified within MHI's bylaws prior to 1972, (ii) deemed illegal by the Civil Rights Act of 1968, (iii) removed from MHI's bylaws due to the heroic efforts of the (now late) Honorable Merritt Lane, Jr., who was a MHI resident at the time, and (iv) reinitiated in the late 1980s after the untimely passing of Judge Lane, by way of asserting ownership of the Dirt Roads of Water Witch in order to "control" and harass selective homeowners;

(i) tortiously interfere with homeowners' rights as full rate Middletown taxpayers by (i) refusing to dissolve MHI and use proceeds to make the Dirt Roads of Water Witch safe for all so that Middletown can accept them as public roads, and (ii) preventing Middletown from conducting any non-routine maintenance on the Dirt Roads of Water Witch pursuant to a 1989 township ordinance; and

(j) interfere with and manipulate the legal process of government, including, but not limited to making false claims of ownership of real property, and recording with and submitting to government officials, forged documents;

(k) limit the utilization of MHI's sole revenue-generating asset, a wedding hall venue, to benefit the desires of the handful of owners who chose to buy a home next to a wedding hall and who now control the MHI's board of directors, all to the financial detriment of the corporate entity, MHI;

(l) prevent the sale, for the benefit of the corporation, of two of the last three buildable lots that sit next to the homes of three MHI officers who want to maintain a sense of wooded seclusion;

(m) continue the practice of tax evasion both on an individual and corporate level; and

(n) engaged in the practice of collecting as debt fess and "assessments" that it has not authority to charge of collect.

7.    The nature of the scheme is also extortionary in that the Defendants, through threats of harm and under color of official right, obtain property from homeowners who are forced to (i) pay "fees" or "assessments" toward the liabilities of the corporate entity that is MHI, and (ii) convey their fee simple interest in real property to a master deed that Defendants, via MHI, can control.

8.    The Current Officer Defendants, Former Director Defendants, and Defendant Kristen L. Claussen have all breached the fiduciary duties they each owe to Plaintiffs and other shareholders of MHI.

9.    While Defendant Don Claussen leads the charge in falsely misrepresenting to government officials and shareholders that MHI is a homeowner's association with a master deed for which he alone has authority to act; the deed to the real property that he and his wife, Defendant Kristine Claussen, own in Water Witch contains no Alleged MHI Restrictions (defined below).

The same is true of the deeds of Defendants Adam Sirois, Marisha Sirios, Julie Swartwood, Ravi Sarma, Divya Kapur, MHI Director Michael O'Neil and his wife Kathy O'Neil, and many others.

10.    Given this hypocrisy, self-dealing, fiduciary neglect and negligence, financial ruin, selective enforcement, retaliation, lack of temperament, and harassment, and downright dangerous infrastructure, Plaintiffs do not want to associate with Defendant MHI.

11.    With respect to MHI, Plaintiffs are primarily seeking from the Court to be compensated for their surrendered shares in MHI and the return of all paid "fees" as they never received any unique services to which they were not otherwise entitled as full-rate taxpayers of Middletown.

## **PARTIES**

12.    Plaintiff Mitchell Nelson is a Jewish citizen of New Jersey, residing at 27 Bayview Terrace, Middletown, New Jersey 07732 ("27 Bayview"), which he owns with his wife, Plaintiff Sarah Hearn-Nelson. He spends a significant amount of his time in Florida.

13.    Plaintiff Sarah Hearn-Nelson is a citizen of the United Kingdom of Great Britain and Northern Ireland, residing at 27 Bayview Terrace, which she owns with her husband, Plaintiff Mitchell Nelson. She spends a significant amount of her time in Florida.

14.    Plaintiff Paulina Giraldo-James is a Latina citizen of New York, residing at 20 Exchange Place, #2214, New York, New York 10005, and owner of record of 30 Bayview Terrace, Middletown, New Jersey 07732 ("30 Bayview").

15.    Upon information and belief, Defendant Don Clausen is a citizen of New Jersey, residing at 42 West Twin Road, Middletown, New Jersey 07732, who appears to be the *de facto* president of Defendant MHI although there are no corporate records as to when he became

president or even having been elected as such. At times, he claims that he is both the "president" and "treasurer."

16.     Upon information and belief, Defendant Derek DeBree is a citizen of New Jersey, residing at 4 Serpentine Drive, Middletown, New Jersey 07732, who appears to be the *de facto* treasurer of Defendant MHI although there are no corporate records as to when he became treasurer or even having been elected as such.

17.     Upon information and belief, Defendant Marisha Sirios is a citizen of New York, residing at 1 Pike Street, Apartment C2, New York 10002, which she owns with her husband Defendant Adam Sirios, 24 Witches Lane, Middletown, New Jersey 07732, and who appears to be the *de facto* secretary of Defendant MHI although there are no corporate records as to when she became secretary or even having been elected as such.

18.     Upon information and belief, Defendant Julie Swartwood is a citizen of New Jersey, residing at 2 Serpentine Drive, Middletown, New Jersey 07732, and who appears to be the *de facto* vice president of Defendant MHI although there are no corporate records as to when she became vice president or even having been elected as such.

19.     Upon information and belief, Defendant Leslie Krause is a citizen of New Jersey and an attorney who was deemed ineligible to practice law in the State of New Jersey, residing at 19 Park Way, Middletown, New Jersey 07732, and was the president of MHI up to and during the months of July and August 2019.

20.     Upon information and belief, Defendant Matt Maccia is a citizen of New Jersey, residing at 25 Waterwitch Drive, Middletown, New Jersey 07732, who previously sat on the Board of Directors of MHI.

21.     Upon information and belief, Defendant Monroe Jason Moyer ("Defendant Clausen") is a citizen of New Jersey, residing at 5 Nicol Terrace, Rumson, New Jersey 07732 as of July 27, 2021, but previously owned 14 Witches Lane, Middletown, New Jersey 07732 and previously was a shareholder of MHI and sat on the Board of Directors of MHI.

22.     Upon information and belief, Defendant Robert Kellner is a citizen of New Jersey and a licensed architect, residing at 36 West Twin Road, Middletown, New Jersey 07732, who previously sat on the Board of Directors of MHI and is currently the chair of MHI's tree committee.

23.     Upon information and belief, Defendant Kristine L. Claussen is a citizen of New Jersey, residing at 42 West Twin Road, Middletown, New Jersey 07732, who previously was the chairperson of MHI's social committee.

24.     Upon information and belief, Lynn Maccia is a citizen of New Jersey, residing at 25 Waterwitch Drive, Middletown, New Jersey 07732, who previously sat as chairperson of MHI's wedding committee.

25.     Upon information and belief, Defendant William S. Rustico is a citizen of New Jersey, residing at 9 Serpentine Drive, Middletown, New Jersey 07732, who previously sat on the Board of Directors of MHI.

26.     Upon information and belief, Defendant William Schreiber is a citizen of New Jersey, residing at 35 Seaview Terrace, Middletown, New Jersey 07732, who previously sat on the Board of Directors of MHI.

27.     Upon information and belief, Defendant Adam Sirios is a citizen of New York, residing at 1 Pike Street, Apartment C2, New York 10002, which he owns with his wife Defendant Marisha Sirios, 24 Witches Lane, Middletown, New Jersey 07732, and is a shareholder of MHI.

28.     Upon information and belief, Defendant Ravi Sarma is a citizen of New Jersey, residing at 17 Park Way, Middletown, New Jersey 07732, and is a shareholder of MHI.

29.     Upon information and belief, Defendant Teresa Kellner is a citizen of New Jersey and a licensed architect, residing at 36 West Twin Road, Middletown, New Jersey 07732.

30.     Upon information and belief, Defendant Craig Reinauer is a citizen of New Jersey, residing at 32 Seaview Terrace, Middletown, New Jersey 07732, and is a shareholder of MHI.

31.     Upon information and belief, Defendant Susan Glass is a citizen of New Jersey, residing at 37 East Twin Road, Middletown, New Jersey 07732, who is the live-in companion of one of the members of the Board of Directors of MHI.

32.     Defendant Monmouth Hills, Inc. is a New Jersey for-profit corporation expressly "reformulated" under and subject to the law of the New Jersey Business Corporation Act (*N.J.S.A.* 14A:1-1, et seq.) on June 24, 1972, with offices located at c/o Access Property Management, 4 Walter E. Foran Blvd., Suite 311, Flemington, NJ 08822.

33.     Upon information and belief, Defendant Ariadne Goerke Downey is a citizen of Virginia residing at 713 North Lincoln Street in Arlington, Virginia 22201.

34.     Upon information and belief, Defendant Marguerite Ann Goerke Downey is a citizen of Virginia residing at 1400 S Joyce Street, Apt. 118 in Arlington, Virginia 22202-1803.

35.     Upon information and belief, Defendant Carol Ann Goerke Taylor is a citizen of North Carolina residing at 102 Debrock Court in Cary, North Carolina 27519-7360.

36.     Upon information and belief, Defendant Nancy Goerke Bell is a citizen of New York residing at 53 Cherry Street in Geneva, NY 14456-1605.

37.    Upon information and belief, Defendant Leland Clayton Currier is a citizen of Maryland residing at 340 Stonehouse Drive in Severna Park, MD 21146-2025.

38.    Upon information and belief, Third-Party Defendant William Frank Currier is a citizen of South Carolina residing at 8661 Monticello Road in Columbia, SC 29203-9706.

39.    Upon information and belief, Defendant Access Property Management, Inc. ("Access") is a New Jersey for-profit corporation with its principal place of business located at 1090 King Georges Post Rd Ste 301, Edison, New Jersey, 08837 and purports to serve as the property manager of MHI.

40.    Upon information and belief, Defendant Louise Krinsky is a citizen of New Jersey residing at 1 Portland Rd, Unit #7, Highlands, New Jersey 07732, is an officer of Access Property Management, and identified herself as the "secretary" of MHI.

41.    Upon information and belief, Defendant Fox & Roach LP d/b/a Berkshire Hathaway HomeServices Fox & Roach, REALTORS® is a licensed real estate broker in the State of New Jersey with a branch office located at 110 Avenue of Two Rivers, Rumson, New Jersey 07760, for which Defendant Derek DeBree is an employee and agent.

42.    Upon information and belief, Defendant OceanFirst Financial Corporation is a New Jersey for-profit corporation with its principal place of business located at 975 Hooper Avenue Toms River, New Jersey 08753, whose subsidiaries coordinate to provide a suite of services to homebuyers.

43.    Upon information and belief, Defendant Trident Abstract Title Agency is a corporate subsidiary of Defendant OceanFirst Financial Corporation with its principal place of business located at 1340 A, Campus Pkwy, Wall Township, New Jersey 07753.

44.     Upon information and belief, Defendant Morgan Engineering LLC is a New Jersey limited liability company with its principal place of business located at 130 Central Avenue, Island Heights, NJ 08732 ("Morgan").

45.     Upon information and belief, Lauren Plump is a citizen of New Jersey, who is a principal and the chief executive officer of Morgan.

46.     Upon information and belief, David J. von Steenburg is a citizen of New Jersey, who is a professional land surveyor licensed in the State of New Jersey under license number 34500 and is who employed by Morgan.

**<u>RELATED PARTIES</u>**

47.     Upon information and belief, Arthur Phair is a citizen of New Jersey, residing at 36 East Twin Road, Middletown, New Jersey 07732, which he purchased in 1988, and now owns with his wife, Joan Kugelmann, and sits on the Board of Director of MHI.

48.     Upon information and belief, Michael O'Neil is a citizen of New Jersey, residing at 34 Seaview Terrace, Middletown, New Jersey 07732, and sits on the Board of Director of MHI.

49.     Upon information and belief, Joan Kugelmann, is a citizen of New Jersey and retired attorney licensed in the State of New Jersey, residing at 36 East Twin Road, Middletown, New Jersey 07732, which she now owns with her husband Arthur Phair, and formerly chaired the legal committee of MHI.

50.     Upon information and belief, Richard King, is a citizen of New Jersey and an attorney who was deemed ineligible to practice law in the State of New Jersey, residing at 22 Witches Lane, Middletown, New Jersey 07732, who served as president of MHI for decades since the late 1980s.

51.     Upon information and belief, Cutolo Barros, LLC is a New Jersey limited liability company with its principal place of business located at 46-50 Throckmorton St, Freehold, New Jersey 07728 and purports to at as legal counsel representing the corporate entity that is MHI.

52.     Upon information and belief, Gregg S. Sodini, Esquire, is a citizen of New Jersey and a licensed attorney residing at 7 Hemlock Court, Manalapan, New Jersey 07726, who is an employee and/or agent of Cutolo Barros, LLC.

53.     Upon information and belief, Hubert C. Cutolo, Esquire, is a citizen of New Jersey and a licensed attorney residing at 21 Carriage Hill Drive, Colts Neck, New Jersey 07722, who is an employee and/or principal of Cutolo Barros, LLC.

54.     Upon information and belief, Daniel Barros, Esquire, is a citizen of New Jersey and a licensed attorney residing at 6 North Main Street, Allentown, New Jersey 08501, who is an employee and/or principal of Cutolo Barros, LLC.

55.     Upon information and belief, Kathy O'Neil is a citizen of New Jersey, residing at 34 Seaview Terrace, Middletown, New Jersey 07732, and is the wife of Michael O'Neil.

## **JURISDICTION AND VENUE**

56.     Jurisdiction over the subject matter of this action is proper pursuant to 28 U.S.C. § 1331, as the allegations in this Complaint assert violations of (i) the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. §§ 1961-68, based upon, among other criminal activities, wire fraud, and extortion, (ii) the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601-19 ("FHA"), and (iii) the Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. (hereinafter "FDCPA").

57.    This Court has jurisdiction over state law and common law claims asserted herein under the doctrines of ancillary and pendent jurisdiction and pursuant to the supplemental jurisdiction provision of 28 U.S.C. § 1367(a).

58.    Venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in this District and most of the Defendants reside in this District.

## **FACTUAL BACKGROUND**

i.    *Legal Status of Monmouth Hills, Inc.*

59.    Defendant MHI is a New Jersey for-profit corporation expressly "reformulated" under and subject to the law of the New Jersey Business Corporation Act (*N.J.S.A.* 14A:1-1, et seq.) on June 24, 1972.

60.    Also on April 4, 2023, Defendants Derek DeBree and Don Claussen admitted that Defendant MHI is not in a position to pay its liabilities as they come due.

61.    Defendant MHI is a planned real estate development corporation and subject to the law of the Planned Real Estate Full Disclosure Act (*N.J.S.A.* 45:22A-21 et seq.)

62.    In a 2016 Judgment entered by the Honorable Thomas W. Cavanagh, Jr., P.J.Ch., the Superior Court of New Jersey (the "2016 Cavanagh Judgement"), the court established that:

> *"[MHI] concedes they are not a condominium association, and therefore they are not entitled to any sort of consideration under the Condominium Act. Secondly, [MHI] concedes it is not a homeowner's association. So none of the rights and advantages of a homeowner's association belong in this particular matter. Thirdly, there is no recorded master deed for the obvious reason, that these properties are not constructed under a condominium concept. So there is no master deed."*

63.    Prior to the arrival of the Current Director Defendants, there was no dispute as to MHI's status. Like many corporate vehicles, it was formulated to profit in the purchase, subdivision, development, and sale of real estate, before its dissolution.

64.    MHI still owns (i) a few lots that it was not able to sell since the subdivision was created in 1896, (ii) a clubhouse, and (iii) a tennis court.

65.    Prior to the arrival of the Current Officer Defendants beginning in 2017, participation in MHI was voluntary. In fact, three current owners of real property in Water Witch, who purchased from MHI shareholders, are not shareholders nor charged any fees. Attached hereto as Exhibit A is a survey of deeds to all lands that are/were affiliated with Defendant MHI.

66.    Of the 43 real property owners within Water Witch, only seven deeds that conveyed their interest in the real property contain restrictions as to MHI and its so-called but non-existing rules and regulations (the "Alleged MHI Restrictions") and not even one of these seven deeds were executed after the 2016 Cavanagh Judgement.

67.    The only restriction around the use of real property by shareholders is found in Defendant MHI's bylaws and is a typical common scheme obligation requiring the submission of plans as to any "new" buildings. The bylaws specifically state there are no restrictions as to any "additions or improvements to existing residences."

68.    Since 1989, and by way of a near unanimous shareholder vote, MHI has been prohibited from seeking funds from homeowners to pay for a dilapidated clubhouse that was slated to be demolished and replaced with single family homes.

69.    In 2006, the shareholders of MHI soundly rejected a proposal created by Joan Kugelmann to "amend" the bylaws to effectively create covenants, conditions, and restrictions

("CC&Rs") that would have allow MHI representatives to dictate what homeowners could do with their fee simple property, including granting the right to enter the residences of shareholders.

70.    As of the date of this Complaint, MHI remains without authority to (i) assess its shareholders for the cost and expense of the clubhouse,  (ii) does not have CC&Rs, and (iii) charge for its services. MHI's authority is limited to the assets that the corporation owns.

ii.    _MHI's History of Racial Exclusion and Harassment_

71.    Upon information and belief, there have been countless episodes of the more vocal residents in the community making life difficult for non-whites and Jewish homeowners over the years. This is no surprise as it was not until 1972 that Defendant MHI revised its by-laws to remove the condition that no home could be purchased unless the Board of Trustees deemed that prospective homeowner to be "eligible" to purchase.

72.    Upon information and belief, this illegal requirement was enforced by MHI notwithstanding the enactment of the Fair Housing Act in 1968 that prevented such discrimination. In fact, MHI changed its rule only because of one brave homeowner who threatened to sue, hold out his vote for a requisite recapitalization, and seek the dissolution of the corporation. That holdout was the (now late) Honorable Merritt Lane, Jr., who on the December 14, 1970 wrote to Donald L. Struve, the then president of MHI attaching the draft complaint.

73.    The treatment that Plaintiffs have suffered appears to them very similar to what they discovered, in conversations with former residents, had been done in Water Witch over the past twenty-five years to victimize homosexual couples, interracial couples, single women, Jewish families, non-whites, and foreigners.

74.    Plaintiffs have had to call the police no less than seven times around incidents coming from people Defendant Giraldo-James has never met, but who do know Defendants Claussen and DeBree.

75.    Plaintiffs have received no apologies for the level of abuse and harassment received, and there has been no condemnation of racism or harassment by anyone on MHI's board of directors, despite the incidents being common knowledge. Plaintiff partner's skin color was even a butt of a joke during a virtual meeting of MHI. The officers and directors of MHI are all aware of this conduct and are all complicit in escalating and weaponizing the same in what is clearly a coordinated attack for the purpose of harassing and retaliating.

   *iii.*    *The Dirt Roads of Water Witch*

76.    There is an involved history regarding the Dirt Roads of Water Witch, but in 1989 a negotiation between MHI and Middletown resulted in an agreement by which MHI would declare that it owned the roads and any liability arising therefrom, in exchange for Middletown committing to providing non-routine maintenance (the "1989 Agreement"). This agreement was authorized by way of Middletown Ordinance #89-2117.

77.    Middletown has affirmed their commitment manifold times over the years, so it appears that MHI is preventing the municipality from providing services, in the form of non-routine maintenance to its tax-paying homeowners in Water Witch.

78.    The result of this neglect has resulted in MHI having an infrastructure that is literally crumbling down the hill into the sea. The roads have been deemed "dangerous" as set forth in a November 2006 "Roads and Drainage Report" that MHI commissioned Najarian Associates to author. Two main retaining walls, one six feet high, failed over 20 years ago and ***when*** they completely collapse onto the homes below them, they will bring down with them the roads that

each support. The 127-year-old terra cotta sewer system was deemed past its useful life by what is now 30 years. By 2006, most of the stormwater collection structures had exceeded their useful life, with about half of the gutters and storm water pipes in need of reconstruction. Water mains constantly break, further eroding the dirt roads and leaving residents without water. Dead trees are not removed but left to fall on telephone, electric and cable lines, blocking vehicular traffic and lead to regular outages.

        iv.     *Water Witch's Environmental Crisis*

79.     Upon information and belief, Defendant MHI's neglect and failed infrastructure now has a substantial impact on the environment, human health, and public safety. The insurance policy that MHI provided to Plaintiff specifically excludes any claims related to erosion, environmental violations, or silica dust.

80.     This neglect has led to an environmental crisis and because of the indifference of the Current Officer Defendants and Former Director Defendants to the health risk of soil particles containing crystalline silica entrained to the atmosphere by vehicles from unpaved roads, the Plaintiffs feel that they must now file complaints with the relevant government agencies.

81.     Equally as troubling to Plaintiffs are the violations of law around discharging pollutants into the waters of the United States. Defendants Don Claussen and Derek DeBree have been effective in concealing these violations from the shareholders of MHI for years, notwithstanding the gravity of the impact on public safety. In emails shared with Plaintiffs, the NJDEP recapped an extremely dangerous event caused by MHI during the Independence Day weekend in 2019 in which a mother and young daughter had to be recused from the vehicle due to flash flooding.

82.    Three years after the closure of the neighboring Route 36 caused by Defendant MHI left a mother and child stranded, an identical event happened once more. Incredibly, two days later, MHI brought tons of dirt up the hill to replace what had just washed down. Two days after the event, the NJDEP issued a Notice of Violation, and almost a year later, there has been no change.

> *v.*    *Tortious and Criminal Conduct toward Plaintiffs*

83.    Defendants Don Claussen, Derek DeBree, and Matt Maccia have openly blamed Plaintiffs for the issuance of the Notice of Violation. The three have rallied many in the neighborhood against them by portraying them as traitors because they chose to cooperate with an investigation by an agency of the State of New Jersey. As such, it is no surprise that the Current Officer Defendants, led by Defendant Robert Kellner, have orchestrated a "remediation plan" that would result in creating a major flooding risk to both of Plaintiffs' homes.

84.    Plaintiffs purchased their homes in reliance upon: (a) the annual fee would provide services and other benefits not found in other neighborhoods, (b) the fact that the by-laws of MHI defined its authority, which is nonexistent with respect to each homeowner's existing residences, (c) the fact that MHI is prohibited from amending the By-laws, which can only by modified by a super majority of all homeowners in a process pursuant to the law of this State, (d) a 1989 agreement made by ordinance in which Middletown is responsible for any non-routine repairs to MHI's roadway infrastructure, and (e) the Board complying with not only MHI's by-laws, but also state law, including, but not limited to, statutes under both the New Jersey Business Corporation Act (*N.J.S.A.* 14A:1-1, et seq.) and New Jersey Planned Real Estate Development Full Disclosure Act (*N.J.S.* § 45:22A-21. , et seq.).

85.    Unfortunately, what the Plaintiffs discovered after purchasing their homes was that MHI does not act as it ought by law, but instead as an enterprise which convinces or intimidates homeowners, who can afford to pay millions for properties that were readily available for a fraction

of the cost only years before, to foot the bill for the self-dealing in which a dozen or so long-standing homeowners have engaged in over the past 20 years, unbeknownst to and to the extreme and actual detriment of most shareholders. The consequence to homeowners of objecting is to suffer harassment and intimidation, ad hominem attacks and property theft and damage, in the same manner that a cult retaliates against non-believers.

86.    The purpose of the reformulation of MHI in 1972 with equal shareholders was to maintain a democratic process of one vote for each home in all matters effecting the community. This has been destroyed permanently by various individuals serving as officers over the last twenty years, and in particular by the Current Officer Defendants. As such, MHI serves no useful function except to allow certain homeowners to manipulate and dictate terms upon other homeowners/shareholders for their personal interests.

87.    In addition to damages, disgorgement of profits, and other restitution from the Defendants and their representatives, Plaintiffs seek the specific performance of (i) transfer of ownership of the roadway system of Water Witch to a non-profit entity that will be responsible, in coordination with Middletown, for restoring and maintaining the same ("Water Witch Roadway Foundation"), (ii) public auction of all the remaining assets of MHI with the proceeds used to fund the Water Witch Roadway Foundation. Plaintiffs do not oppose a circumstance in which any group of shareholders that is successful in purchasing MHI assets at said auction, to take such assets by way of a "spinoff/spinout" into a new and separate non-profit entity so that the 1895 date of incorporation is maintained along with the name "Monmouth Hills."

88.    The Defendants have caused Plaintiffs to suffer losses and harm in an amount at least $4,000,000.00 plus interest and for exact amount to be determined at trial, and Plaintiffs seek to recover their monies under, among other legal bases, violations of the Federal RICO Act, 18 U.S.C. § 1961, *et seq*.; New Jersey Civil RICO Act, N.J.S.A. § 2C:41-1, *et seq*.; the Fair Housing Act of

196, 42 U.S.C. § 3601, *et seq*. ("Fair Housing Act"); together with state causes of action for common law fraud; fraud in the inducement; equitable fraud; breach of fiduciary duties; professional negligence; breach of contract; and conversion.

## COUNT I

## (VIOLATION OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c), DEFENDANTS CURRENT OFFICER DEFENDANTS AND THE FORMER DIRECTOR DEFENDANTS, MHI, ACCESS, AND KRINSKY)

89.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 88.

### a. the Applicable Statutes

90.     The Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, provides a private civil action to recover treble damages for "any person injured in his business or property by reason of a violation of section 1962."

91.     The definitional section of RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

92.     Each Plaintiff is a person as defined in 18 U.S.C. § 1961(3) and 1964(c).

93.     Each Defendant is a person as defined in 18 U.S.C. § 1961(3) and 1964(c)

94.     18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

### b. The MHI RICO Enterprise

95.    The MHI RICO Enterprise is an association in fact that consists of the Current
Officer Defendants, the Former Director Defendants, along with (i) the legal entity they control,
MHI, and (ii) the legal entity Access, for whom Krinsky is a principal, who MHI employs to
provide its communications and to manage all its assets and accounting (collectively, the "RICO
Defendants").

96.    The MHI RICO Enterprise functions for the purpose of (i) defrauding homeowners
of Water Witch in to believing that Middletown refuses to provide services to them as full-rate
taxpayers, (2) defrauding Middletown into believing that MHI has the authority to represent such
homeowners in rejecting the services to which they are entitled, (3) extorting from shareholder
homeowners millions of dollars in so-called HOA fees and "special assessments," (4) manipulating
sales of real estate in Water Witch, (5) devaluing Plaintiffs real property by claiming rights in their
real property; all not for the benefit of shareholders of MHI, but instead to serve their personal
benefit and enrichment.

97.    The MHI RICO Enterprise operates as an ongoing organization separate and
distinct from each of RICO Defendants. The MHI RICO Enterprise, an association in fact of
individuals and legal entities, has a structure separate and apart from the pattern of racketeering
activity in which the RICO Defendants are each engaged.

98.    At all times relevant to this Complaint, members and associates of the MHI RICO
Enterprise, functioned together as a continuing unit, with a common purpose for the economic
benefit and gain of the RICO Defendants.  They all participate in the management and operation
of the MHI RICO Enterprise, as further described below. The MHI RICO Enterprise has longevity
sufficient to permit the RICO Defendants to pursue the enterprise's purpose.

99.    The activities of the MHI RICO Enterprise affects interstate and foreign commerce
as the shareholder homeowners, including Plaintiffs, are residents of and or often located in the

states of New York, California, Florida, and the Netherlands. These are "clients" to whom MHI RICO Enterprise charges millions of dollars to provide its services. The MHI RICO Enterprise affects interstate and foreign commerce based on Defendants unlawfully obtaining, transmitting, billing and collection monies via internet portals accessible interstate and from foreign lands, in furtherance of the racketeering scheme as alleged in the Complaint.

### c. The Racketeering Violation

100.    The definitional section of RICO defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within ten years.  18 U.S.C. § 1961(5).

101.    Racketeering activity is defined in 18 U.S.C. § 1961(A)-(B) to include mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and extortion.

102.    During all times relevant and since the time Plaintiffs purchased their homes in Water Witch, and continuing through the filing of this Amended Complaint, RICO Defendants, who as persons associated with and employed by the MHI RICO Enterprise, did knowingly and unlawfully conduct or participate, directly or indirectly, in the MHI RICO Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(1) and §1961(5); all in violation of 18 U.S.C. §1962(c).

103.    The RICO Defendants have engaged in a pattern of racketeering activity after the effective date of RICO and also within 10 years of each individual act. RICO Defendants' actions violated the federal wire fraud statute, a predicate act for purposes of racketeering.

### d. Racketeering Activity

104.    The RICO Defendants transmit communications to Plaintiffs as a singular group, in coordination with and/or on behalf of each other.

105.    The RICO Defendants sent numerous interstate text messages, sent numerous emails to Plaintiffs over the course of five years, in furtherance of the Defendants' scheme to defraud the Plaintiffs by demanding payment of "fees" because (i) Middletown was refusing to provide the services it provides to its other taxpayers or that it was obliged to provide pursuant to the 1989 Agreement, and (ii) an obligation to cover the loses of MHI's wedding venue business.

106.    These intentional misstatements and omissions transmitted in violation of 18 U.S.C. § 1343, including, but not limited to:

> • An email sent from New Jersey by the RICO Defendants to Plaintiff Giraldo-James in New York on February 25, 2021 regarding a MHI Board meeting that included a letter dated January 20, 2021 from Defendant Don Claussen;
>
> • An email sent from New Jersey by the RICO Defendants to Plaintiff Giraldo-James in New York on February 26, 2021 regarding a MHI financials;
>
> • An email sent from New Jersey by the RICO Defendants to Plaintiff Giraldo-James in New York on March 3, 2021 regarding MHI financials and fee increases;
>
> • An email sent from New Jersey by the RICO Defendants to Plaintiff Giraldo-James in New York on April 16, 2021 regarding MHI financials and fee increases;
>
> • An email sent from New Jersey by the RICO Defendants to Plaintiff Giraldo-James in New York on May 17, 2021 regarding "regular meetings;"
>
> • An email sent from New Jersey by the RICO Defendants to Plaintiff Giraldo-James in New York on May 21, 2021 regarding response to document requests;
>
> • An email sent from New Jersey by the RICO Defendants to Plaintiff Giraldo-James in New York on June 4, 2021 regarding MHI financials; and
>
> • An email sent from New Jersey by the RICO Defendants to Plaintiffs in Florida on March 23, 2023 regarding minutes of February 18, 2023 Board meeting.

107.    The RICO Defendants also received three interstate wire transfers of funds in New Jersey from Plaintiff Giraldo located in New York over the course of two years, in furtherance of the Defendants' scheme to defraud the Plaintiffs in violation of 18 U.S.C. § 1343.

108.    Thus, the RICO Defendants, through the MHI RICO Enterprise, committed dozens of separate acts of wire fraud in furtherance of their fraudulent scheme in violation of 18 U.S.C. §1343.

### e. Pattern of Racketeering Activity

109.    Plaintiffs allege that the course of conduct engaged in by the RICO Defendants constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. §1962(c). Plaintiffs can show the relatedness prong because the predicate acts have the similar purposes, results, participants, or methods of commission of are related to the affairs of the MHI RICO Enterprise." All predicate acts had the same purpose of defrauding Plaintiffs of thousands of dollars of fees, deprivation of services, all for the personal enrichment of the RICO Defendants.

110.    Plaintiffs allege that the continuity of the pattern of racketeering activity constitutes closed-ended continuity as it occurred over a substantial period of time and continuing to the present time.

111.    Plaintiffs allege that the pattern of racketeering activity is shown by the threat of continued activity as the RICO Defendants have repeatedly engaged in illegal and illicit activities. Thus, engaging in the pattern of racketeering as set forth herein is the regular way the RICO Defendants conducted its affairs, so the cycle of deception and fraud will continues well into the future if not stopped, Thus, the RICO Defendants' fraudulent activities remain a threat to others and their racketeering activity meets the open-ended continuity test.

### f. Injury

112.    As the direct and proximate result of the Defendants' predicate acts in furtherance of violating in 18 U.S.C. §1962(c), Plaintiffs have been and are continuing to be injured in their property a set forth more fully above.

## COUNT II

### (VIOLATION OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d), (ALL DEFENDANTS)

113.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 112.

114.    Plaintiffs allege that the pattern of racketeering activity is shown by the threat of continued activity as Defendants conspired to violate 18 U.S.C. §1962(c), as more fully described in Count I above. The conspiratorial purpose is to further the schemes to defraud to control the ownership of Water Witch and to allow further profiting to the detriment of the Plaintiffs and all other shareholders.

115.    In particular, the Defendants Kristen Claussen, Adam Sirois, Ravi Sarma, Susan Glass, Teresa Kellner, Lynn Maccia, and Craig Reinauer repeated the same intentional misrepresentations to various homeowners of Water Witch that convinced shareholders to unwittingly vote to destroy portions of Plaintiffs' property, so that the Defendants could avoid personal liability around violations of environmental law.

116.    The Goerke Defendants, in seeking to avoid any alleged liability around violations of environmental law, and the Vendor Defendants, who stood to profit by the revenue received from MHI and Water Witch, likewise conspired to manipulate Plaintiffs' title to real property

117.    The nature of the above-described acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to the inference that Defendants not only agreed to the objective of an 18 U.S.C. §1962(d) violation of RICO by conspiring to violated 18 U.S.C. §1962(c), but was aware that the ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

**COUNT III**

**(VIOLATION OF THE FAIR HOUSING ACT OF 1968, AS AMENDED, 42 U.S.C. §§ 3601-19 ("FHA"), THE "RICO DEFENDANTS)**

118.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 117.

**COUNT IV**

**(VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §1692, ET SEQ. (HEREINAFTER "FDCPA"), THE "RICO DEFENDANTS)**

119.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 119.

**COUNT V**

**(VIOLATION OF NEW JERSEY CIVIL RICO STATUTE, <u>N.J.S.A. 2C:41-1 *et seq.*, ALL DEFENDANTS</u>)**

120.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 120.

121.    For the purposes of Count V, Plaintiffs allege that Defendants acted with the knowledge and intent required to violate the statutes identified as racketeering activity below and/or were willfully blind to or deliberately ignorant of the falsity of the information they conveyed to Plaintiffs.

122.    Defendants violated the New Jersey Civil RICO statute by committing or conspiring amongst themselves and others to commit a pattern of racketeering activity in violation of N.J.S.A. §§ 2C:41-2(c) and -2(d).

123.   Defendants constitute a criminal enterprise, within the meaning of N.J.S.A. §
2C:41-1(c), which has engaged in racketeering activities over a length of time as a regular way of
doing business.  That enterprise, the MHI RICO Enterprise, is described in detail above.

124.   The members of the MHI RICO Enterprise play specific and well-defined roles and
share a common purpose of obtaining pecuniary gain, including money, in connection with their
fraudulent "homeowners' association scheme."

125.   At all relevant times, the MHI RICO Enterprise was and remains engaged in
activities affecting trade or commerce, including, but not limited to, activities in connection with
the sale, purchase, and use of real property in the State of New Jersey.

126.   Defendants have violated and continue to violate N.J.S.A. § 2C:41-2(c) by
conspiring and managing a racketeering enterprise, the MHI RICO Enterprise, which implemented
and continues to implement a plan and pattern of racketeering activities.

127.   Defendants have committed a pattern of racketeering activity through their
agreement to participate in and actual participation in the MHI RICO Enterprise, which is an
association-in-fact enterprise within the meaning of N.J.S.A. § 2C:41-1(c).

128.   Defendants have conspired, among themselves and with the knowing or unknowing
cooperation of others, to violate and continue to violate N.J.S.A. § 2C:41-2(d) by managing a
racketeering enterprise, the MHI RICO Enterprise, which implemented and continues to
implement a plan and pattern of racketeering activities.  In furtherance of that conspiracy,
Defendants committed overt acts that include, but are not limited to, the racketeering activity under
N.J.S.A. § 2C:41-1(a)(2) as alleged in *supra* paragraphs.

129.   Additionally, Defendants, through the MHI RICO Enterprise, violated several
sections of the New Jersey Uniform Securities Act, N.J.S.A. § 49:3-47 *et seq.*, *see infra*

paragraphs193-203, and each violation on its own constitutes racketeering activity pursuant to N.J.S.A. § 2C:41-1(a)(p).

130.    Defendants, through the MHI RICO Enterprise, on two or more occasions, also purposefully committed, attempted to commit, solicited another to commit, conspired to commit, or engaged in acts involving theft by deception in violation of N.J.S.A. § 2C:20-4 by obtaining the property of another by deceitful means and artful practices with the intention of depriving Plaintiffs of their property.

131.    As elaborated upon above, Defendants repeatedly used false and misleading statements to induce Plaintiffs to pay association fees.  Through this conduct, Defendants created or reinforced Plaintiffs' false impression of existing facts, including facts relating to the value of their investments in Defendant MHI, which Defendants knew or believed to be false, in violation of N.J.S.A. § 2C:20-4(a).

132.    The Current Officer Defendants also prevented Plaintiffs from obtaining information pertinent to their investments in Defendant MHI, including information that would have contradicted the false representations of fact provided by Defendants in furtherance of their homeowners' association scheme and in violation of N.J.S.A. § 2C:20-4(b).  Defendants failed to correct a false impression they created or reinforced by their purposeful delay and unscrupulous tactics in not providing information in further violation of N.J.S.A. § 2C:20-4(c).

133.    Defendants' repeated and related violations of N.J.S.A. § 2C:20-4(a), (b), and (c) constitute racketeering activity pursuant to N.J.S.A. § 2C:41-1(a)(n).

134.    Defendants, therefore, have committed many criminal acts in furtherance of their homeowners' association scheme which qualify as racketeering activity under N.J.S.A. § 2C:41-1.

135.    Defendants violated N.J.S.A. § 2C:41-2(c) by associating with an enterprise and conducting or participating, indirectly or indirectly, in that enterprise through a pattern of racketeering activity.

136.    Defendants also violated N.J.S.A. § 2C:41-2(d) by conspiring with others, including, but not limited to, other members of the MHI RICO Enterprise, to violate N.J.S.A. § 2C:41-2(c).  In furtherance of that conspiracy, Defendants committed overt acts that include but are not limited to the racketeering activity alleged above.

137.    As a direct and proximate result of these racketeering activities by Defendants, Plaintiffs have suffered injury to their business and property, as well as costs and attorneys' fees relating to this action.  Plaintiffs are entitled to an award of treble damages and reasonable attorneys' fees incurred in pursuing this action pursuant to N.J.S.A. § 2C:41-4(c).

**WHEREFORE**, Plaintiffs hereby demand judgment be entered in their favor and against Defendants and John/Jane Does 1-15 and ABC Corporations 1-5, each of them individually, jointly and severally as follows:

(A)    For damages against the Defendants, each of them individually, jointly and severally, in an amount to be determined upon trial of this action, which amount exceeds Two Million Dollars ($2,000,000) and the sum duly trebled in accordance with N.J.S.A. § 2C:41-4(c); and

(B)    For costs of this suit including reasonable attorneys' fees in accordance with N.J.S.A. § 2C:41-4(c); and

(C)    For such other further relief that this Court deems just and proper pursuant to N.J.S.A. § 2C:41-4(a).

**COUNT VI**

**(BREACH OF FIDUCIARY DUTY, THE RICO DEFENDANTS AND THE VENDOR DEFENDANTS)**

138.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 137.

139.    Each of the RICO Defendants by way of corporate officers of MHI, to which Plaintiffs are shareholders, and the Vendor Defendants, pursuant to licensing by the State of New Jersey, our Plaintiffs duties as fiduciary.

140.    This duty was breached and as a result, Plaintiffs suffered harm

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury of any issue triable of right by a jury.

Dated: Rumson, New Jersey

August 11, 2023

                                            **LAW OFFICES OF G. AARON JAMES**


                                            By:___/s/ G. Aaron James_____
                                                G. Aaron James
                                                6 Hunt Street, #336
                                                Rumson, New Jersey 07760
                                                Telephone:  (732) 291-5143
                                                *Attorneys for Plaintiffs Mitchell Nelson,*
                                                *Sarah E. Hearn-Nelson, and*
                                                *Paulina Giraldo-James*