**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MITCHELL NELSON, et al., | |
| Plaintiffs, | Civil Action No. 23-01896 (RK) (JBD) |
| v. | **OPINION** |
| DON CLAUSSEN, et al., | |
| Defendants. | |

**KIRSCH, District Judge**

       **THIS MATTER** comes before the Court upon numerous motions and cross motions to dismiss. More than forty named Defendants[1] move to dismiss Plaintiffs Mitchell Nelson's, Sarah E. Hearn-Nelson's, and Paulina Giraldo-James' Second Amended Complaint ("SAC"). (ECF Nos. 11, 12, 13, 58, 63, 68, 69, and 85.) Several Defendants also move for sanctions pursuant to Federal Rule of Civil Procedure ("Rule") 11.[2] (ECF Nos. 71 and 75.) Plaintiffs oppose these motions and, in their opposition, again request to amend their complaint. (*See* ECF No. 90.) The Court has

---

[1] The named Defendants are: (1) Don Claussen; (2) Derek Debree; (3) Marisha Barlatier Sirois; (4) Julie Swartwood; (5) Leslie Krause; (6) Lynn Maccia; (7) Robert Kellner; (8) Monroe Jason Moyer; (9) Matt Maccia; (10) William S. Rustico; (11) William Schreiber; (12) Kristine L. Claussen; (13) Adam Sirois; (14) Ravi Sarma; (15) Teresa Kellner; (16) Craig Reinauer; (17) Susan Glass; (18) Monmouth Hills, Inc.; (19) Ariadne Goerke; (20) Marguerite Ann Goerke Downey; (21) Carol Ann Goerke Taylor; (22) Nancy Goerke Bell; (23) Leland Clayton Currier; (24) William Frank Currier; (25) Access Property Management, Inc. ("Access"); (26) Louise Krinsky; (27) Fox & Roach LP d/b/a Berkshire Hathaway HomeServices Fox & Roach ("Fox & Roach"); (28) OceanFirst Financial Corporation ("OceanFirst"); (29) Trident Abstract Title Agency ("Trident"); (30) Joseph A. Gabas; (31) Taylor Callahan; (32) Gina Dimaggio; (33) Koren Gassaro; (34) Morgan Engineering LLC ("Morgan"); (35) Lauren Plump; (36) Dave von Steenburg; (37) Cutolo Barros, LLC; (38) Gregg S. Sodini; (39) Hubert C. Cutolo; (40) Daniel Barros; and (41) Biancamano & Distefano. (ECF No. 77 ("SAC") at 2.) In addition, Plaintiffs name "John/Jane Does 1-15, and ABC Corporations 1-5." (*Id.* at 2.)

[2] One of the cross motions for dismissal—that of Defendants Taylor Callahan, Gina Dimaggio, Joseph A. Gabas, Koren Gassaro—joins Defendants OceanFirst's and Trident's motion for sanctions. (*See* ECF No. 85 at 9–10 (joining ECF No. 71).)

considered the parties' submissions and resolves the matter without oral argument pursuant to Rules 78 and Local Civil Rule 78.1.

For the reasons set forth below, the motions and cross motions to dismiss are **GRANTED**, (ECF Nos. 11, 12, 13, 58, 63, 68, 69 and 85), and Counts I through V of the SAC are dismissed with prejudice. The motions for sanctions are **DENIED** without prejudice. (ECF Nos. 71 and 75.)

## I.    <u>BACKGROUND</u>

The operative Complaint now before the Court is the SAC—the third complaint filed on behalf of Plaintiffs. Plaintiffs are and have been represented by the same legal counsel throughout the entirety of this litigation. The Court will not attempt to recite the full, tortured procedural history of this case. Instead, the Court cites the May 1, 2024 Memorandum Order (ECF No. 76) issued by the Honorable J. Brendan Day U.S.M.J. and incorporates by reference pages one through eight of same. (*See id.* at 1–8.) Accordingly, the Court only briefly recites the background relevant to the present dispute.

Plaintiffs are three "recent homebuyers" in a housing development in Monmouth Hills Historical District of Middletown Township, New Jersey. (SAC ¶ 2.) One plaintiff is Jewish; a second plaintiff is a non-U.S. citizen; and the third plaintiff is Latina "whose partner and father of her only child is African American."[3] (*Id.* ¶¶ 2, 9, 10, 11.) The SAC is a 33-paged, 149-paragraphed pleading which nonetheless is jumbled and exceedingly difficult to discern. As best as the Court can make out, the SAC appears to claim that Plaintiffs' homeowner's association is siphoning contributed monies from the homeowners, concealing environmental hazards from same, and discriminating against homeowners within Plaintiffs' community on the basis of religion,

---

[3] The Court notes for the record that it believes this refers to Plaintiffs' Counsel who frequently appears to reference himself in the pleadings as Plaintiff Giraldo-Nelson's partner and the father of their child. He is not a party to this litigation. (*See* RICO Case St. at 17, 33, 40 and *infra* note 11.)

citizenship, and race. Inflammatory allegations notwithstanding—which include grandiose claims of "witness tampering," "extortion," and "tax evasion"— Plaintiffs claim Defendants' misdeeds affect both "interstate and foreign commerce" with a trans-Atlantic reach to the Netherlands. (*See id.* ¶¶ 1, 5(m), 6, 100, 126.)  As described below, the sheer volume of the scattershot allegations does not compensate for or distract from the SAC's patent factual and legal deficiencies.

Plaintiffs' litigation "strategy" can be described as follows. Each time that Plaintiffs have been confronted with motions to dismiss, Plaintiffs have either filed—or sought to file—an amended complaint. With each amended complaint, Plaintiffs have added both defendants and causes of action. The initial Complaint was filed on April 4, 2023—almost 18 months ago. (*See* ECF No. 2.) The initial Complaint named some twenty-eight individual and business entities as defendants, a number that does not include additional unnamed individuals and corporations. (*See id.*) The first round of motions to dismiss, (*see* ECF Nos. 11, 12, 13), was met with Plaintiffs' first Amended Complaint ("FAC"); the FAC added four new defendants. (*See* ECF No. 15 ("FAC"); *see also* ECF No. 76 at 2.) At that point, the total number of named defendants was thirty-two. (*See* FAC.) Additionally, the FAC increased the initial Complaint's four counts (with three causes of action) to six counts (with five causes of action). (*See id.*) Among other causes of action is a purported violation of the Federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (*See id.* ¶¶ 56, 119.)

In response to the FAC, Defendants either renewed their previously filed motions to dismiss or, in the case of the newly-added defendants, filed motions to dismiss. (*See*, *e.g.*, ECF No. 19 at 2; ECF No. 58 at 2; ECF No. 59-2 at 8; ECF No. 69 at 1; *see also* ECF No. 35 at 1.) In response, Plaintiffs moved *again* to amend their complaint, and this time, sought to file a RICO Case Statement. (*See* ECF Nos. 53, 54, 55.)

While Judge Day's Memorandum Order authorizes the filing of the SAC, it makes clear that it did so simply to put an end to Plaintiffs' dilatory antics and, finally, to allow this Court to attempt to address the litany of Defendants' motions to dismiss on the merits.[4] The Memorandum Order also chronicles Plaintiffs' repeated failures to abide by Court-ordered deadlines, failure to comply with Local Civil Rules, as well as Plaintiffs' repeated pleading errors and miscitations to the record. Regrettably but aptly, Plaintiffs' antics are encapsulated by the following:

> [T]he procedural chaos that [P]laintiffs have caused through their serial amendments, their untimely and non-compliant filings, and their failure to adhere to the Court's directives—and notwithstanding the undersigned's serious misgivings about the legal sufficiency of the proposed SAC (as well as the initial complaint and FAC)—the Court will grant the motion to amend. The Court emphasizes that it is doing so solely for the sake of efficiency . . . . [as] the undersigned has doubts about the sufficiency of the allegations set forth in the proposed SAC and RICO case statement . . . .

(*Id.* at 9–10.) Judge Day continued:

> In the year since they filed the initial complaint, [P]laintiffs have wreaked havoc on the docket by continually flouting deadlines and repeatedly asking for more time to add more amendments. Contrary to plaintiffs' apparent belief, Rule 15 is not subject to "relaxation." [ECF Nos. 51, 70], and the rule does not establish a never-ending 'drafting' process that permits counsel constantly to "modif[y]" a pleading at will . . . *To avoid undue prejudice and still further delay . . . . [P]laintiffs will be directed not to file further motions or requests to amend or supplement the SAC without further leave of Court.*

(*Id.* at 11–12 (emphasis added).) Judge Day directed the Clerk of the Court to file the SAC and the RICO Case Statement,[5] which were entered onto the Docket later that day at ECF No. 77.

---

[4] Judge Day admonished Plaintiffs for their never-ending delay strategy, which included seeking to file another amended complaint: "The Court will deny [P]laintiffs' request in their reply brief to file yet another amended complaint at this time." (ECF No. 76 at 11.)

[5] Judge Day in his Memorandum Order also noted that Plaintiffs were never ordered to file a RICO Case Statement. (ECF No. 76 at 6 n.3.)

Now before the Court is the SAC which names more than forty individual and business entity Defendants, not including unnamed "John/Jane Does 1-15 and ABC Corporations 1-5." (*See* ECF No. 77 ("SAC").) Plaintiffs, in seven Counts, assert claims under the Racketeering Influenced and Corrupt Act ("RICO Act"), 18 U.S.C. § 1962 (a)-(d) (Counts I through IV); the Fair Housing Act of 1968, 42 U.S.C. §§ 3601-19 (Count V); the New Jersey Civil RICO Statute, N.J.S.A. 2C:41 *et seq.* (Count VI); and a common law breach of fiduciary duty claim (Count VII).[6]

As with the first round of motions to dismiss, Defendants moved to rely on and, in some cases, to supplement their previous motions. (*See* ECF Nos. 78, 80, 81, and 83). In addition, newly-added Defendants moved to dismiss. (ECF No. 85.) Remarkably, Plaintiffs *yet again* sought to amend the complaint. This time, Plaintiffs' attempt—along with their belief that motion practice is a collaborative drafting process between the Court and litigants—surfaced in their opposition to the motions to dismiss. (ECF No. 90 at 7.) Therein, Plaintiffs stated that they "request[ed] that the Court . . . identify any deficiencies, and allow Plaintiffs to amend their Complaint to correct the same . . . . Plaintiffs appreciate and welcome the Court's determinations around any deficiencies that can be cured in an amended complaint." (*Id.*) Plaintiffs, attempting to circumvent Judge's Day's Memorandum Order, slipped their request to amend into their opposition. Again, they neither sought nor obtained leave of Court—as ordered—to seek yet another amendment. Adding insult to injury, Plaintiffs' Counsel seems to seek a *de facto* advisory opinion. It is axiomatic that the Court's function is not to provide legal advice to a party.

Turning now to the SAC, the forty-one named Defendants are residents of various states, including New Jersey (SAC ¶¶ 12–13, 15–23, 25–28, 37, 41–46, 49–50); New York (*id.* ¶¶ 14, 24,

---

[6] In its jurisdictional statement, the SAC states it pleads claims arising under the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692) and 42 U.S.C. §§ 1981-1982. (SAC ¶ 58). These statutes are never again mentioned in the SAC, and accordingly, no causes of action under these two statutes have been pled within the SAC.

33); North Carolina (*id.* ¶ 32); South Carolina (*id.* ¶ 35); Maryland (*id.* ¶ 34); and Virginia (*id.* ¶¶ 30–31.) Additionally, the SAC names several New Jersey corporations as well as a law firm (*id.* ¶¶ 29, 36, 39, 47); a New Jersey limited liability company (*id.* ¶ 48); a corporate subsidiary of another Defendant whose principal place of business is in New Jersey, (*id.* ¶ 40); and a "licensed real estate broker[age] in the State of New Jersey" (*id.* ¶ 38).

## II.   <u>LEGAL STANDARD</u>

### A.   MOTION TO DISMISS

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, allegations that are "no more than conclusions" may be disregarded. *Id.* at 679. Restatements of the elements of a claim are legal conclusions, and therefore, are inadequate alone to survive dismissal. *See Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The court accepts allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

For fraud claims, a complaint is subject to Rule 9(b)'s heightened pleading standard "[i]ndependent of the standard applicable to Rule 12(b)(6) motions." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b)'s heightened pleading standard applies to claims for fraudulent concealment. *See Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The complaint must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Rule 9(b)'s heightened pleading standard "ensure[s] that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citations and quotations omitted). While Rule 9(b)'s requirements may be "relaxe[d]" when the plaintiff "demonstrate[s] that specific information is in the exclusive control of the defendant," the plaintiff must nonetheless "allege facts suggesting fraudulent concealment." *Weske*, 934 F. Supp. 2d at 703 (internal citations omitted).

Rule 8 requires a complaint to contain: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8's purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While under Rule 8(a) Plaintiffs are not required to set forth detailed factual allegations in their complaints, they have an "obligation to provide the

'grounds' of [their] 'entitle[ment] to relief' . . . ." *Twombly*, 550 U.S. at 555. Courts in the District of New Jersey have found that vague references to defendants as a group and asserting "general common factual allegations against all of them" is impermissible group pleading. *E.g*, *Sheeran v. Blyth Shipholding S.A.*, No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (dismissing plaintiffs' claims on impermissible group pleading grounds under Rule 8); *Russo v. City of Paterson,* No. 16-5665, 2017 WL 2312360, at *3 (D.N.J. May 25, 2017) (noting that group pleading is particularly a problem in cases where there are "different types of defendants (*e.g.*, individual defendant officers, supervisory individuals, the City of Paterson)"); *ATR Paper Inc. v. Bangkit (U.S.A.), Inc.*, No. 23 -12696, 2024 WL 3518119, at *4 (D.N.J. July 24, 2024) (dismissing counterclaims on group pleading grounds where it was "impossible to ascertain from the counterclaims what actions were taken directly" by one individual or another).

## B.    RULE 11 SANCTIONS

Pursuant to Rule 11, a court may impose sanctions on attorneys and parties. Rule 11 requires that any "pleading, written motion, or other paper" filed or submitted to the Court "not be[] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corp.*, 677 F. App'x. 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings. *Howe v. Litwark*, 579 F. App'x. 110, 115 (3d Cir. 2014) (quoting *Cooter & Geil v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). To secure Rule 11 sanctions, a party must make a sanctions motion "separately from any other motion and must describe the specific conduct that allegedly violates [Rule 11]." Fed. R. Civ. P. 11(c)(2). Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct. Fed. R. Civ. P. 11(c)(4). In addition, notice to the alleged offender is required. *See* Fed. R. Civ. P. 11(c)(1).

### III.    DISCUSSION

#### A.    MOTION TO DISMISS

Below, the Court analyzes the deficiencies in the SAC and the RICO Case Statement.[7] There are many. Many of these Defendants are listed with little specificity and are mentioned by name in only a few paragraphs within the SAC.[8] Additionally, many of the Defendants' connections to the events underlying the SAC, at best, are vague, and at other times, seemingly nonexistent.[9] Further, in their seven-Count SAC, while Plaintiffs seem to level arguments against specific Defendants within the titles of each Count, Plaintiffs incorporate by reference the entirety of their SAC into the first paragraph of each Count—even where the Defendants incorporated by reference were not involved in those underlying events. (*See* SAC ¶¶ 90, 114, 123, 125, 129, 147.) However, in its analysis, the Court focuses on two principal issues: impermissible group pleading and failure to state a claim, including Plaintiffs' failure to meet the heightened pleading requirements of Rule 9(b).

---

[7] Because a court "may consider the RICO Case Statement together with the complaint in assessing a motion to dismiss[,]" *Kisano Trade & Inv. Ltd. v. Lemster*, No. 11-852, 2011 WL 5593678, at *4 (W.D. Pa. Sept. 27, 2011) (internal citations omitted), *report and recommendation adopted*, No. 11-852, 2011 WL 5593654 (W.D. Pa. Nov. 17, 2011), the Court also discusses the deficiencies within the RICO Case Statement. The Court notes for purposes of the record that Plaintiffs were never required nor requested to file such a statement. As noted by Judge Day in his Memorandum Order, although the title of the RICO Case Statement states that it is a "RICO Case Statement Pursuant to the Court's Order of December XX, 2023," no such order was ever entered. (ECF No. 76 at 6 n.3.)

[8] By way of example, Defendant OceanFirst is mentioned in only two paragraphs within the SAC—one of which is a cross-reference. (SAC ¶¶ 39–40.) This is not the only deficiency of its kind. (*E.g.,* ECF No. 81-1 at 10 (noting how Defendants Ariadne Goerke; Marguerite Goerke Downey; Carol Goerke Taylor; Nancy Goerke Bell; Leland Clayton Currier; and William Frank Currier—who are not residents of the State of New Jersey—are mentioned in only three paragraphs within the SAC).)

[9] For instance, three Defendants who were added to this litigation by the SAC—Taylor Callahan, Gina Dimaggio, and Koren Gassaro—have no information regarding their connection to this matter pled to their names other than that they are "_____ of Trident." (SAC ¶¶ 42–44.) According to the SAC, Trident is a title agent which works in concert with others to "manipulate title searches" and "share confidential information of" Plaintiffs with others without Plaintiffs' consent. (*Id.* ¶ 119.) No additional factual allegations regarding these three individual Defendants are set forth in the SAC.

The SAC is deficient first because it impermissibly group pleads. "[A] [c]omplaint cannot 'indiscriminately attribute wrongdoing to a group of defendants, leaving them to guess as to who allegedly did what.'" *Kong v. Johnson & Johnson*, No. 23-3091, 2024 WL 1640996, at *5 (D.N.J. Apr. 15, 2024) (internal citations omitted). Defendants do not invoke the group pleading doctrine by name, and not all Defendants move under Rule 8 for dismissal.[10] However, Defendants in one shape or another point to the same issue: the SAC is vague and impermissibly groups Defendants. (*E.g.*, ECF No. 11-1 at 10, 13; ECF No. 12-1 at 6; ECF No. 13-1 at 7; ECF No. 58-1 at 7l; ECF No. 59-2 at 6–8; ECF No. 69-1 at 2–3; ECF No. 80-1 at 12–13; ECF No. 82 at 8; ECF No. 83 at 2–3; *see also* ECF No. 85 at 10.) The Court agrees; the SAC is impermissibly vague, and the Court finds that the SAC fails to provide Defendants with any semblance of notice as required under Rule 8.

The SAC fails under Rule 8 because it does not delineate precisely to whom it is referring when alleging wrongful conduct, and thus, is impermissibly vague. Although the SAC initially lists each Defendant under "Parties," some of these Defendants are mentioned by name only two or three times within the 149-paragraphed SAC. (*See* ECF No. 12-1. at 7; ECF No. 59-2 at 18.) The SAC broadly references "Defendants" at least thirty-eight times without specifically defining against which of the forty-one Defendants the claim is leveled. (SAC ¶¶ 1, 5, 6, 47, 88–89, 100, 106, 108, 113, 115, 116 122, 130–132, 135–146); *see Shaw v. Hous. Auth. of Camden,* No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (dismissing claims against defendants who

---

[10] The Court notes that while Defendants Ravi Sarma, Teresa Kellner, Susan Glass, Ariadne Goerke, Marguerite Goerke Downey, Carol G. Taylor, Nancy G. Bell, Leland Clayton Currier, William Frank Currier, Cutolo Barros LLC, Gregg S. Sodini, Hubert C. Cutolo and Daniel Barros do argue for dismissal on Rule 8 grounds, they cite out-of-circuit authority in support this proposition. (ECF Nos. 12 at 9–10; ECF No. 80-1 at 12–13.)

were only named when enumerating the parties to the action and were collectively named as "defendants" later within the action).

Take, for example, Defendant OceanFirst; it is named with specificity in only two paragraphs of the SAC. (SAC ¶¶ 39–40.) What Defendant OceanFirst's connection to the variety of other allegations—where the SAC frequently references "Defendants" as a group or where Defendant OceanFirst is incorporated by reference into all seven Counts—is unknown and unstated. *See Russo*, 2017 WL 2312360, at *3 (noting that the complaint was deficient on group pleading grounds where plaintiff incorporated by reference all previous allegations into a negligence claim where the allegations in the negligence claim alleged conduct for which—by plaintiff's own admission—all defendants were not responsible).

Another example is Count III of the SAC. The entirety of this Count reads as follows:

> 123. Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 122.
>
> 124. Plaintiffs allege that the RICO Defendants received income derived from the pattern of racketeering activity, which is used to for [sic] operation of [Monmouth Hills, Inc.], which is engaged in, or the activities of which affect, interstate or foreign commerce all in violation of 18 U.S.C. §1962(a) [sic].

(SAC ¶¶ 123–124.) Here, although Plaintiffs incorporate by reference the entirety of their SAC, thus suggesting that Count III applies to all Defendants, Plaintiffs only set forth specific allegations against the "RICO Defendants" in the body of Count III. Many of Defendants were not alleged to have participated in the conduct in the Counts in which these same Defendants were incorporated by reference. (*E.g.*, ECF No. 80-1 at 14 n.1; ECF No. 81 at 5.)

This is impermissible group pleading. Where there are forty-one named Defendants, Plaintiffs may not incorporate the entirety of their SAC into a Count where the allegations which they are pleading in that specific Count relate only to a few of these same forty-one Defendants.

Since "[a]lleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when[]" and "[s]uch speculation is anathema to contemporary pleading standards[,]" *Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14–01206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014), the SAC is deficient.

Relatedly, Plaintiffs fail to define groupings of Defendants upon which they rely, further frustrating the Court's task of evaluating Plaintiffs' claims. For example, Plaintiffs refer to groups of Defendants as "Current Director Defendants," (SAC ¶ 65); "Current Officer Defendants," (*id.* ¶¶ 67, 82, 84, 87, 141); "Defendants Claussen," (*id.* ¶¶ 76, 96); "Former Director Defendants," (*id.* ¶ 82); and the "Goerke Defendants," (*id.* ¶ 117). There are confounding problems with these classifications, the least of which is that none of these groupings have been defined. Without more specificity, the Court is unable to properly interpret the causes of action leveled within the SAC. *Sheeran*, 2015 WL 9048979, at *3 (noting that, because the complaint failed to identify entities with specificity, instead referring to them vaguely as "business entit[ies]," the *Sheeran* court was unable to infer what theory of liability plaintiff was advancing). Plaintiffs' SAC is deficient under Rule 8 because it fails to provide each Defendant any semblance of proper notice.

The RICO Case Statement suffers similar deficiencies. The RICO Case Statement, too, vaguely refers to "Defendants." (RICO Case St. at 40, 49, 50, 51, 53, 56, 57, 58, 60.) As the Court has already stated, in an action where there are forty-one named Defendants, such pleading practices violate Rule 8. Contrary to the RICO Case Statement's purported purpose—to assist the Court—it injects further uncertainty. For example, the RICO Case Statement introduces new group definitions into this litigation. Groupings such as "Former MHI Executives," "Cornelius Descendants," and "Goerke Descendants"—groupings never referenced, discussed, or defined

within the SAC—appear only in the RICO Case Statement. (*Id.* at 25, 47, 48.) The panoply of Defendants—along with the variety and fluid manner in which Plaintiffs refer to these same Defendants—is confounding. To add to the Court's confusion, Plaintiffs' attorney oddly appears to plead facts in the RICO Case Statement that pertain to himself.[11] He is not a party to this litigation. On this point, no additional discussion is warranted.

In addition to the SAC's problems under Rule 8, the SAC is deficient under 12(b)(6). In order for a complaint to survive dismissal under 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting. *Twombly*, 550 U.S. at 570)). Here, the SAC does not state a claim that is plausible on its face. For example, the SAC makes bold assertions, claiming discrimination based on religion (Plaintiff Mitchell Nelson is Jewish); citizenship status (Plaintiff Sarah Hearn-Nelson is a citizen of the United Kingdom); and race (Plaintiff Paulina Giraldo-James is Latina and she asserts that her child is African American). (SAC ¶ 2.) These assertions are untethered to any of the causes of action. Take, for example, the following from the SAC: "Upon information and belief, there have been countless episodes of the more vocal residents in the community making life difficult for non-whites and Jewish homeowners over the years." (*Id.* ¶ 73.) The SAC attempts to contextualize this statement, concluding this thought with another sentence that Plaintiffs attempt to string together: "This is no surprise as it was not until 1972 that Defendant [Monmouth Hills, Inc.] revised its by-laws to remove the condition that no home could be purchased unless the Board of Trustees deemed that prospective homeowner to be 'eligible' to purchase." (*Id.*) The nexus of these statements to any of the causes of action before the Court is unclear.

---

[11] Plaintiffs state, for example, that Defendant Don Claussen "target[ed]" Plaintiff Giraldo Nelson's "African American attorney and cast[] him into the racist 'angry black man' trope." (RICO Case St. at 17; *see also id.* at 26–27 (alleging same conduct by Defendant Leslie Krause)).

Plaintiffs seek to remedy these deficiencies by asserting that "countless" unnamed and otherwise unidentified individuals have suffered from this treatment. (*See id.*) Plaintiffs state that others in their community "have suffered [sic] appears to them very similar to what they discovered, in conversations with former residents, had been done in Water Witch over the past twenty-five years to victimize homosexual couples, interracial couples, single women, Jewish families, non-whites, and foreigners." (*Id.* ¶ 75.) Again, this assertion does not appear to be connected with any of Plaintiffs' causes of action. Indeed, the whimsical nature of Plaintiffs' factual recitation is best highlighted by the fact that Plaintiffs' allegations of homophobia are not mentioned again within their SAC. Overall, the SAC makes broad statements of "witness tampering," "extortion," and "tax evasion" which Plaintiffs claim affect "interstate and foreign commerce." (*See id.* ¶¶ 1, 5(m), 6, 100, 126.) Ultimately, they plead no connection between these assertions and any of the causes of action.

This problem is only exacerbated by Plaintiffs' RICO Case Statement. As a preliminary matter, while the RICO Case Statement claims many instances of discrimination, the Court is unclear as to how these allegations are related to Plaintiffs' RICO Act causes of action.

For example, as it relates to Defendant Susan Glass, in their RICO Case Statement, Plaintiffs write:

> Glass is a specimen of crass racism and sexism. Glass is captured on video making offensive gestures at Plaintiffs, telling them to leave because no-one wants them to live there, telling them they are not welcome in social events, making false claims that she and her husband own land that MHI sold 120 years ago, and calling them misogynistic profanities. Upon information and belief, she is an unstable person who has been put up to this behavior by the MHI Officers in order that she behaves as an "attack dog" for the MHI RICO Enterprise.

(*Id.* at 37.) These accusations are followed by a discussion of how Defendant Susan Glass "'voted'" to "redirect tens of thousands of gallons of polluted stormwater runoff toward the homes of Plaintiffs that will serve to destroy the utility easements and flood their homes." (*Id.* at 37.) Again, Plaintiffs' accusations are untethered to any facts related to the RICO Act related causes of action.

These hyperbolic allegations do not conceal the fact that Plaintiffs cannot plead a cause of action under the federal statutes which confer this Court with subject matter jurisdiction. Plaintiffs plead causes of action under two federal statutes: the RICO Act (18 U.S.C. § 1962) and the Fair Housing Act (42 U.S.C. § 3601, *et seq.*). However, the SAC does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[]'" under either statute. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570.) Instead, the pleadings are merely conclusory statements. *Purvis v. City of Newark*, No. 16-1830, 2017 WL 6450481, at *2 (D.N.J. Dec. 15, 2017).

Looking first at the allegations under RICO, Counts I through IV advance allegations under §§ 1962(a)-(d). In relevant part, 18 U.S.C. § 1962 provides:

> **(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity. . . .
> **(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
> **(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
> **(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962. To plead a civil RICO Act claim at the motion to dismiss stage, the complaint must sufficiently set forth the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 507–08 (D.N.J. 2000) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985)); *see also Morales v. Superior Living Prod., LLC*, 398 F. App'x 812, 814 (3d Cir. 2010). To show a pattern of racketeering activity, a plaintiff must allege at least two predicate acts of racketeering; predicate acts of racketeering activity include mail and wire fraud. *Morales*, 398 F. App'x at 814 (citing 18 U.S.C. § 1961(1)). Here, as conceded by Plaintiffs in their opposition, the predicate acts upon which Plaintiffs rely for their RICO Act claims are mail and wire fraud.[12] Where Plaintiffs allege mail and wire fraud as the predicate of their purported RICO Act violations, Plaintiffs are "subject to the heightened pleading standard of Rule 9(b)." *Weiss v. First Unum Life Ins.*, No. 02-4249, 2003 WL 25713970, at *6 (D.N.J. Aug. 27, 2003); *see also McBride v. Twp. of Washington*, No. 19-17196, 2020 WL 3396802, at *5 (D.N.J. June 19, 2020) ("Because fraud claims are advanced as the predicate RICO acts, they must be pled with the level of specific and particularity required by Rule 9(b)." (internal citations omitted)); *A-Valey Engineers, Inc. v. Bd. of Chosen Freeholders of Cnty. of Camden*, 106 F. Supp. 2d 711, 715 (D.N.J. 2000) ("RICO [Act] 'predicate acts' that consist of acts of fraud must be pled with sufficient particularity under Fed.R.Civ.P. 9(b)."). Thus, because Plaintiffs "present a fraud-based RICO claim, they must plead with particularity the circumstances of the alleged fraud." *Morales*, 398 F. App'x at 814 (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)).

---

[12] Specifically, Plaintiffs state: "Where a plaintiff relies on mail and wire fraud as the basis for its allegations of racketeering activity, as is the case here, the allegations of fraud must comply with *Fed. R. Civ. P.* 9(b)'s heightened pleading standard." (ECF No. 90 at 15) (emphasis in the original).

"To plead mail or wire fraud with sufficient particularity, plaintiffs must plead the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *McBride*, 2020 WL 3396802, at *5 (quoting *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985) (internal marks omitted)). To do this, a plaintiff "must include identification and explanation of the specific conduct alleged to be fraudulent, often by providing the 'date, place and time' that the alleged fraud occurred or some 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting *Seville Indus. Machinery Corp*, 742 F.2d at 791).

Plaintiffs fail to meet this heightened standard and fail to plead fraud with particularity despite having had multiple opportunities to have done so, and thus, the RICO Act related causes of action must be dismissed. First, Plaintiffs fail to adequately allege with particularity the fraudulent circumstances underlying their RICO Act claims. Plaintiffs here plead predicate acts of mail and wire fraud, and while Plaintiffs claim that they meet the resultant heightened pleading requirement because "[t]here can be no dispute that within the RICO Case Statement, Plaintiff [sic] has alleged scores of misrepresentations sent via the mail, Zoom, and email for the purpose of defrauding[,]" (ECF No. 90 at 15), the Court disagrees.

In terms of the racketeering activity that has been alleged, Plaintiffs' SAC pleads the following:

> These intentional misstatements and omissions transmitted in violation of 18 U.S.C. § 1343, including, but not limited to:
> - An email sent from New Jersey *by the RICO Defendants*[13] to Plaintiff Giraldo-James in New York on February 25, 2021

---

[13] The SAC defines the "RICO Defendants" as follows: "Defendants Claussen, [Kristine] Claussen, [Derek] Debree, [Marisha] Barlatier [Sirois], [Julie] Swartwood, [Leslie] Krause, [Teresa] Kellner, [Monroe Jason]

regarding a MHI Board meeting that included a letter dated January 20, 2021 from Claussen in which he misrepresents the situation with the NJDEP and fabricated a board meeting around increases to fees in which he misrepresents the situation with the NJDEP and fabricated a board meeting around increases to fees;[14]

- An email sent from New Jersey *by the RICO Defendants* to Plaintiff Giraldo-James in New York on February 26, 2021 regarding a MHI financials;

- An email sent from New Jersey *by the RICO Defendants* to Plaintiff Giraldo-James in New York on March 3, 2021 regarding MHI financials and fee increases;

- An email sent from New Jersey *by the RICO Defendants* to Plaintiff Giraldo-James in New York on April 16, 2021 regarding MHI financials and fee increases;

- An email sent from New Jersey *by the RICO Defendants* to Plaintiff Giraldo-James in New York on May 17, 2021 regarding "regular meetings;"

- An email sent from New Jersey *by the RICO Defendants* to Plaintiff Giraldo-James in New York on May 21, 2021 regarding response to document requests;

- An email sent from New Jersey *by the RICO Defendants* to Plaintiff Giraldo-James in New York on June 4, 2021 regarding MHI financials;

- Board meeting via Zoom from New Jersey *by the RICO Defendants* to Giraldo in New York on June 29, 2021 during which MHI misrepresents shareholder liability in the event of dissolution;

- Posting via web portal of December 2022 minutes misrepresenting the status of litigation with Giraldo, ADR requirements, Reinauer's acquisition of 33 Seaview Terrace, and other relevant misrepresentations.

- An email sent from New Jersey *by the RICO Defendants* to Giraldo in New York on February 1, 2023 misrepresenting

---

Moyer, [Matt] Maccia, [William S.] Rustico, [William] Schreiber, Cutolo Barros[, LLC]; [Gregg S.] Sodini; [Hubert C.] Cutolo; [Daniel] Barros, [Monmouth Hills, Inc.], Access, and [Louise] Krinsky [sic]." (SAC ¶ 96.)

[14] The Court separately notes the circular and nonsensical nature of these claims. Plaintiffs state that "Claussen fabricated a board meeting around increases to fees in which he misrepresents the situation with the NJDEP and fabricated a board meeting around increases to fees[.]" (SAC ¶ 107.) While the Court deduces by the use of the pronoun "he" that Plaintiffs are referring to Defendant Don Claussen rather than his wife of the same last name, Plaintiffs' allegations are circular. Here, Plaintiffs state that Defendant Don Claussen "misrepresented" and "fabricated" a board meeting surrounding increases to fees wherein Defendant Don Claussen "misrepresented" the situation and "fabricated" a board meeting around fees.

the status of litigation with Giraldo and other relevant facts.
Sent via mail as well.

- An email sent from New Jersey *by the RICO Defendants* to Plaintiffs in Florida on March 23, 2023 regarding minutes of February 18, 2023 Board meeting.
- An email sent from New Jersey *by MHI and DeBree* to Nelson and Hearn in Florida and Giraldo-James in New York on 16 June 2023, reconfirming the proposal to redirect hundreds of thousands of gallons of polluted flood waters to the properties of Plaintiffs, and commending Kellner for design.

(SAC ¶ 107 (emphases added).) As suggested by the Court's emphases, these alleged fraudulent activities state in broad terms that emails were sent—they do not state by whom and instead attribute the emails broadly to a group of Defendants. One of these statements does not contain any information as to the date these communications were posted or transmitted only that there was "[p]osting via web portal" of "minutes;" what these minutes are from, where they were posted, and by whom, are unknown. Lastly, none of these cited communications include any information asserting a basis of fraud or deceit, except for conclusory references using the word "misrepresent." Indeed, as discussed as *supra* note 14, some of these references are circular and nonspecific. *Weiss*, 2003 WL 25713970, at *7 (in finding that plaintiff did not plead the predicate acts of mail and wire fraud with particularity in the RICO Act claim context, noting that plaintiff "allege[d] that the various defendants engaged in a scheme to defraud holders and beneficiaries of long term disability policies . . . . [and] generally allege[d], without differentiation, that the defendants" took part in a variety of misconduct.) Nowhere do Plaintiffs explain or even connect how these purported misrepresentations contained in emails, Zoom, or "web portal" postings were part and parcel to a RICO Act violation. This fails to provide the particularity required under Rule 9. *Id.* at *6 (noting that "general allegations of fraud against multiple defendants 'without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy

Rule 9(b).'" (internal citations omitted)); *see also Feingold*, 516 F. App'x at 226 (finding that the district court did not err in dismissing a fraud claim where plaintiff had not "allege[d] any specific acts, statements, or instances of misrepresentation o[f] fraud . . . .").

Even if the Court found these statements were sufficient to plead fraud with particularity, Plaintiffs contradict their own evidence in their RICO Case Statement thereby undermining any particularity that could have been established in the SAC. Specifically, the RICO Case Statement changes the "who" of the communications that underlie Plaintiffs' pled predicate acts—alleging that different individuals sent these same communications that form the basis for Plaintiffs' RICO Act causes of action. The RICO Case Statement states:

- An email sent from New Jersey by *the MHI Officers,*[15] *Access, and Krinsky* to Giraldo in New York on February 25, 2021, regarding a MHI Board meeting that included a letter dated January 20, 2021 from Defendant Don Claussen in which he misrepresents the situation with the NJDEP and fabricated a board meeting around increases to fees;
- An email sent from New Jersey by *the MHI Officers, Access, and Krinsky* to Giraldo in New York on February 26, 2021 misrepresenting MHI financials;
- An email sent from New Jersey by *the MHI Officers, and Krinsky* to Giraldo in New York on March 3, 2021 misrepresenting MHI financials and fee increases;
- An email sent from New Jersey *by the MHI Officers, Access, and Krinsky* to Giraldo in New York on April 16, 2021 misrepresenting MHI financials and fee increases;
- An email sent from New Jersey *by the MHI Officers, Access, and Krinsky* to Giraldo in New York on May 17, 2021 misrepresenting "regular meetings;"
- An email sent from New Jersey *by the MHI Officers, Access, and Krinsky* to Giraldo in New York on May 21, 2021 regarding misleading responses to document requests made by Plaintiffs;

---

[15] The RICO Case Statement defines the "MHI Officers," verbatim, as follows: "Defendant Don Claussen ('Claussen'), Defendant Derek DeBree ('DeBree'), Defendant Marisha Barlatier Sirois ('Barlatier'), and Defendant Julie Swartwood ('Swartwood,' collectively with Claussen, DeBree, and Barlatier, the 'MHI Officers')" (RICO Case. St. at 12.)

- An email sent from New Jersey *by the MHI Officers, Access, and Krinsky* to Giraldo in New York on June 4, 2021 misrepresenting MHI financials;
- Board meeting via Zoom from New Jersey *by the MHI Officers, Access and Krinsky* to Giraldo in New York on June 29, 2021 during which MHI misrepresents shareholder liability in the event of dissolution;
- Posting via web portal of December 2022 minutes misrepresenting the status of litigation with Giraldo, ADR requirements, Reinauer's acquisition of 33 Seaview Terrace, and other relevant misrepresentations.
- An email sent from New Jersey *by the MHI Officers, Access, and Krinsky* to Giraldo in New York on February 1, 2023 misrepresenting the status of litigation with Giraldo and other relevant facts. Sent via mail as well.
- An email sent from New Jersey by *the MHI Officers, Access, and Krinsky* to the Nelsons in Florida on March 23, 2023 misrepresenting amendment as an ADR measure.
- An email sent from New Jersey by *Defendant MHI and Derek DeBree* to Plaintiffs the Nelsons in Florida and Giraldo-James in New York on 16 June 2023, reconfirming the proposal to redirect hundreds of thousands of gallons of polluted flood waters to the properties of Plaintiffs, and commending Kellner for design.

(RICO Case St. at 53–54 (emphases added).) As indicated by the Court's emphases above, when comparing this list against that within their SAC—in nearly every iteration—Plaintiffs change the alleged Defendants involved in the pattern of RICO Act racketeering they plead. Plaintiffs inexplicably remove several Defendants named in the purported pattern of RICO Act racketeering within the SAC from their RICO Case Statement, including but not limited to: Defendants Teresa Kellner; Monroe Jason Moyer; Matt Maccia; William S. Rustico; William Schreiber; Cutolo Barros LLC, Gregg S. Sodini; Hubert C. Cutolo; and Daniel Barros. The SAC and the RICO Case Statement were filed concurrently; there is no explanation for these discrepancies. (*See* SAC ¶ 107; RICO Case St. at 53–54.) Where Plaintiffs clearly fail to support their allegations of the predicates of mail or wire fraud with "the who, what, when, where and how of the events at issue[,]" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d

Cir. 2016) (citations omitted)—and where Plaintiffs actually change the "who" underlying the

pattern they set forth—the requirements of Rule 9(b) are clearly not met. The Court further notes

that dismissal of Plaintiffs' RICO Act causes of action serves the underlying purposes of Rule

9(b), which are "to safeguard defendants against spurious charges of immoral and fraudulent

behavior." *Seville Indus. Mach. Corp.*, 742 F.2d at 791. Here, where Plaintiffs employ a "kitchen

sink" approach to litigation and insert inflammatory accusations divorced from fact, this

underlying public policy purpose is well-served.

      Plaintiffs' prospects are bleaker still when examining their cause of action under the Fair

Housing Act. When looking at the facts pled in support of the Fair Housing Act claim, Plaintiffs

put forth little to no facts in support of this claim. They plead the following:

> 74. Upon information and belief, this illegal requirement was
> enforced by MHI notwithstanding the enactment of the Fair Housing
> Act in 1968 that prevented such discrimination. In fact, MHI
> changed its rule only because of one brave homeowner who
> threatened to sue, hold out his vote for a requisite recapitalization,
> and seek the dissolution of the corporation. That holdout was the
> (now late) Honorable Merritt Lane, Jr., who on the December 14,
> 1970 wrote to Donald L. Struve, the then president of MHI attaching
> the draft complaint.
>
>      . . .
>
> 89. The Defendants have caused Plaintiffs to suffer losses and harm
> in an amount at least $4,000,000.00 plus interest and for exact
> amount to be determined at trial, and Plaintiffs seek to recover their
> monies under, among other legal bases, violations of the Federal
> RICO Act, 18 U.S.C. § 1961, *et seq.*; New Jersey Civil RICO Act,
> N.J.S.A. § 2C:41-1, *et seq.*; the Fair Housing Act of 196, 42 U.S.C.
> § 3601, *et seq.* ("Fair Housing Act"); together with state causes of
> action for common law fraud; fraud in the inducement; equitable
> fraud; breach of fiduciary duties; professional negligence; breach of
> contract; and conversion.
>
>      . . .
>
> Count V (VIOLATION OF THE FAIR HOUSING ACT OF 1968,
> AS AMENDED, 42 U.S.C. §§ 3601-19 ("FHA"), THE "RICO
> DEFENDANTS)

127. Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 126.

128. Plaintiffs allege that the RICO Defendants have discriminated against them in the provision of services or facilities in connection with their status as shareholders within a planned real estate community.

(SAC ¶¶ 74, 89, 127–128.) This is the entirety of the facts pled in the SAC relating to a violation of the Fair Housing Act. Such facts do not contain sufficient factual matter to state a claim that is "'plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S at 570). Indeed, these conclusory statements appear to have no relevance to the federal statute which Plaintiffs are invoking, and the Court is left to wonder what theory of liability under the Fair Housing Act Plaintiffs are pleading since no information has been presented.[16]  The inability to plead a federal cause of action renders fatal this Court's subject matter jurisdiction, as both the RICO Act related claims and the Fair Housing Act claim are patently deficient. *See* 28 U.S.C. § 1331.

As to the state law claims in Counts VI and VII, the court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c). What is more, the Court harbors serious doubts as to its ability

---

[16] Plaintiffs' opposition advances the following arguments on this topic:

> Plaintiffs allege that both Defendants Fox & Roach and MHI, though Defendant DeBree, engaged in discrimination based on race within Water Witch. As alleged in their Second Amended Complaint and RICO Case Statement Defendant DeBree, after discovering Giraldo and her African American family were interested in moving to Water Witch, by purchasing 14 Witches Lane, he along with Defendant Monroe Jason Moyer, who owned 14 Witches Lane at the time, immediately made the home unavailable for sale to Giraldo.

> In addition to this ongoing discriminatory housing practice, MHI is also in violation of 42 U.S.C. § 3604(b) as it discriminates against Plaintiffs "in the provision of services or facilities." The MHI RICO Enterprise treats Plaintiffs as second class, having made a determination that they can simply reroute hundreds of thousands of gallons of its polluted water onto Plaintiffs' property.

(ECF No. 90 at 22.) Coupled with the dearth of facts in the SAC, these arguments provide the Court with no insight as to what theory of liability Plaintiffs are arguing.

to exercise personal jurisdiction over many of the named Defendants. While difficult to parse through jurisdictional questions given the group pleading issue,[17] the personal availment of many of the forty-one named Defendants of the benefits of the State of New Jersey—particularly where these same Defendants have not been alleged to have had any contacts with the State of New Jersey—is in serious doubt. Notwithstanding, the state law claims are dismissed without prejudice—permitting Plaintiffs to plead them in state court, if they so choose. *Poling*, 99 F. Supp. 2d at 518.

### B.    AMENDMENT IS FUTILE AND INEQUITABLE

The Court next considers whether the deficiencies within the SAC could be resolved through amendment. The Court need not dismiss with leave to amend if amendment would be "inequitable or futile." *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002) (citations omitted); *see also Poling*, 99 F. Supp. 2d at 507–08 (dismissing with prejudice a RICO claim where plaintiffs had failed to comply with the court's orders and had previously amended their complaint); *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, No. 16-6510, 2019 WL 2281632, at *4 (D.N.J. May 29, 2019) (dismissing with prejudice because plaintiff had failed to remedy previously identified deficiencies within his amended complaint); *Krasil v. Betze*, No. 22-6914, 2023 WL 6635319, at *19 (D.N.J. Oct. 12, 2023), *appeal dismissed*, No. 23-3006, 2024 WL 2010217 (3d Cir. Mar. 25, 2024) (dismissing with prejudice where plaintiff had "had repeated attempts to cure his deficient pleading[]" and had "failed to abide" by the Court's admonitions, instead filing a "ninety-one page Amended Complaint [which] only expand[ed] and

---

[17] Courts have noted that group pleading makes the discernment of jurisdictional questions particularly difficult. *See Stratton v. iM3NY LLC*, No. 22-466, 2023 WL 4456910, at *1 (D. Del. July 11, 2023), *report and recommendation adopted*, No. 22-466, 2023 WL 4824954 (D. Del. July 27, 2023) (noting that group pleading was "particularly problematic" where the Court attempted to discern who was subject to the *Stratton* Court's jurisdiction).

expound[ed] on the prior deficient Complaint"); *Prince v. Trumark Fin. Credit Union*, No. 22-3097, 2022 WL 10584444, at *5 (E.D. Pa. Oct. 18, 2022), *appeal dismissed*, No. 22-3173, 2023 WL 3529406 (3d Cir. Mar. 2, 2023) (dismissing "claim with prejudice as [Plaintiff] ha[d] now twice failed to plead" his claims). The Court here will dismiss the federal causes of action with prejudice because, for the reasons below, any amendments to the SAC would be futile and inequitable.

Plaintiffs' inability to remedy their pleading deficiencies by amendment in their RICO Act causes of action is best explored by comparison with the instructive decision in *Poling v. K. Hovnanian Enterprises*. 99 F. Supp. 2d 502 (D.N.J. 2000). In that case, the Honorable Faith S. Hochberg U.S.D.J. (ret.) analyzed claims by disgruntled *pro se* family members that claimed that an inheritance to which they were entitled under their grandparents' wills was wrongfully withheld from them. 99 F. Supp. 2d at 505. One of the ways that the *Poling* plaintiffs claimed they were deprived of their inheritance was through a purported RICO conspiracy orchestrated by thirty-six defendants, many of whom had little to no connection to the action before the *Poling* Court. *Id.* As with Plaintiffs here, the *Poling* plaintiffs alleged a RICO conspiracy on the basis of a mail and wire fraud. *Id.* at 508. Judge Hochberg found that the *Poling* plaintiffs' claims "failed to 'adequately describe[] the nature and subject of the alleged misrepresentation[s]' committed by the 36 defendants . . . . In  sweeping terms, the Complaint accuse[d] various defendants of 'knowingly and willfully devis[ing] a scheme' . . . forging and fabricating documents . . . and breaching their fiduciary duties to plaintiffs . . . ." *Id.* at 508–09. The *Poling* plaintiffs had also failed to comply with the *Poling* Court's orders by not filing a RICO Case Statement. *Id.* at 509. Overall, Judge Hochberg found that the *Poling* plaintiffs had repeatedly failed to meet the heightened pleading requirement of Rule 9(b)—despite multiple opportunities to remedy their

deficiency; this repeated failure merited dismissal of the RICO Act causes of action with prejudice. *See id.*

Like in *Poling*, Plaintiffs have been presented with ample opportunities to meet the heightened pleading standard, having amended their complaint multiple times already. Both the initial complaint and the amended complaint pled RICO Act causes of action prior to the SAC's filing. This means the following: over the course of the past year, Plaintiffs have had every opportunity to supplement, amend, or otherwise alter their RICO Act causes of action. (*See* ECF Nos. 1, 15.) The SAC is Plaintiffs' third attempt to state a cause of action. What is more, the Court also has Plaintiffs' RICO Case Statement which provided them with yet *another* opportunity to remedy these deficiencies. Instead, as discussed above, the RICO Case Statement only exacerbated them. Where Plaintiffs represented by the same legal counsel throughout this litigation have already had ample opportunity to remedy these deficiencies—and where they have repeatedly attempted to circumvent a decision on same by repeatedly seeking to amend—Plaintiffs have shown that further amendments are futile. *Poling*, 99 F. Supp. 2d at 509; *Columbus LTACH Mgmt., LLC*, 2019 WL 2281632, at *4.

It is also manifestly clear that allowing yet another amendment in this case would be inequitable. Here, the underlying facts of the case have not changed—and indeed, Plaintiffs have had the ample opportunity to develop their claims through multiple amendments to their complaint as well as through a RICO Case Statement. Allowing Plaintiffs a fourth "bite at the apple," would be inequitable given that the protraction of this litigation has caused the more than forty named Defendants to spend an inordinate amount of time and resources defending against this lawsuit notwithstanding Plaintiffs' well-chronicled and repeated inability to abide by the Rules and Court

Orders. Further protraction through dismissal without prejudice would be inequitable. The RICO Act causes of action fail, and they must be dismissed with prejudice.

Any amendment to the Fair Housing Act claim would be similarly futile and inequitable. Like the RICO Act causes of action before it, the Fair Housing Act cause of action has been pled in previous complaints within this lawsuit; Plaintiffs have failed to add facts to this cause of action despite having had ample opportunity to do so. *See Columbus LTACH Mgmt., LLC*, 2019 WL 2281632, at *4 (dismissing with prejudice because plaintiff had failed to remedy previously identified deficiencies within his amended complaint). What is more, allowing Plaintiffs another opportunity would be inequitable since it would subject Defendants "to additional cost in added time, attention and financial expense." *Krasil*, 2023 WL 6635319, at *19. Accordingly, this claim too must be dismissed with prejudice.

## C.    RULE 11 SANCTIONS

Multiple Defendants have moved for the imposition of sanctions pursuant to Rule 11, including Defendants OceanFirst; Trident; Craig Reinauer; Taylor Callahan; Gina Dimaggio; Joseph A. Gabas; and Koren Gassaro. (ECF Nos. 71, 75, and 85.) OceanFirst and Trident's motion indicates that repeated letters were issued to Plaintiffs' Counsel warning him of sanctionable conduct. (ECF Nos. 71-2 at 6–10.) In multiple filings, Defendants chronicle Plaintiffs' serial "bad faith," (*id.* at 5),  "speculative and unfounded claims . . . devoid of any legal or factual merit," (*id.* at 4), "barely comprehensible . . . frivolous pleading[s]," (*id.* at 5), and "stigmatizing" claims, (*id.* at 14), which have "no basis in fact or law," (ECF No. 75-2 at 8). Defendants further argue that Plaintiffs "fail[] to plead a single specific act" as to certain Defendants (*id.* at 7), and that "no reasonable investigation could have been made . . . ." (*Id.* at 8.) Overall, Defendants call Plaintiffs' SAC "wholly frivolous," (*id.* at 4) and full of "blunderbuss, bald and conclusory claims[,]"  (*id.*),

which demonstrate a "degree of carelessness and nonchalance with respect to a frivolous RICO pleading, [which] carr[ies] significant reputational and financial consequences for the accused, [and] should be sanctioned." (ECF No. 85 at 10.)

Remarkably, Plaintiffs' oppositions to the motions for sanctions can only be characterized as cursory and dismissive. Essentially, Plaintiffs give the myriad of serious allegations the proverbial back of the hand. The entirety of Plaintiffs' responses consists of a two-and-a-half-page letter—on Plaintiffs' Counsel's letterhead no less—where Plaintiffs' Counsel interlined and quoted Shakespeare's *Hamlet*, saying: "'[Defense Counsel] doth protest too much, methinks.'"(ECF No. 72 at 3.) Additionally, Plaintiffs' Counsel devotes less than one page of their twenty-page opposition to the motions to dismiss to rebut any Rule 11 arguments. (ECF No. 90 at 23.) In light of the record of this case and Judge Day's repeated and clear admonitions, Plaintiffs' haphazard and nonchalant leveling of serious and consequential allegations is an affront to the Court and an abuse of the judicial process.

Here, as has been made plain throughout this Opinion, Plaintiffs and Plaintiffs' Counsel are skirting dangerously close to violating Rule 11, authorizing the imposition of its panoply of sanctions. Fed.R.Civ.P. 11(c). While a credible argument surely, and regrettably, may warrant the imposition of sanctions in this case, the Court notes that Rule 11 should only be imposed in exceptional cases. *Shaikh v. Germadnig*, No. 23-2301, 2024 WL 2861845, at *4 (3d Cir. June 6, 2024) (citing *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)); *see also O'Brien v. Compass Grp. USA, Inc.*, No. 17-13327, 2024 WL 3949319, at *7 (D.N.J. Aug. 26, 2024) (noting that in evaluating motions for sanctions, a "'district court must exercise discretion and sound judgment in dealing with the myriad [of] methods with which lawyers may abuse the judicial process.'" (internal citations omitted)).

With the ninety docket entries entered in this case in a little more than a year—combined with Plaintiffs' kitchen-sink legal strategy—the Court believes that the imposition of sanctions would only prolong this torturous litigation for the more than forty named Defendants, who have expended significant time and resources over some eighteen months, and who, along with the Court, have been forced to run down rabbit hole after rabbit hole. Defendants OceanFirst and Trident aptly summarized the manifest impropriety of Plaintiffs' litigation strategy, as well as the implications on those Defendants ensnared in this lawsuit by saying: "Plaintiffs' [C]ounsel's inadequate pleadings and improper conduct in this case has caused both the Court and Defendants (and the many other [D]efendants baselessly drawn into this lawsuit) to devote significant time and resources to claims that have no place in this Court." (ECF No 71-2 at 7.)

It is the very protracted nature and the attendant expenses—both financial and reputational—on Defendants which countenances the Court to demur and exercise its discretion in order to bring closure to this litigation. *Shaikh*, 2024 WL 2861845, at *4 (affirming the district court where the district court denied Rule 11 sanctions, because, *inter alia*, the imposition of sanctions would result in the prolonging of litigation). Accordingly, the motions for sanctions are denied without prejudice.

## **CONCLUSION**

Defendants' motions and cross motions to dismiss are **GRANTED**. (ECF Nos. 11, 12, 13, 58, 63, 68, 69, and 85.) Defendants' motions for sanctions are **DENIED** without prejudice. (ECF Nos. 71 and 75.) Counts I through V are hereby **DISMISSED** with prejudice. (ECF No. 77.) To the extent Defendants' motions and cross motions seek relief not otherwise addressed in this Opinion and the accompanying Order, they are **DENIED**. The Clerk of the Court is directed to close the case file. An appropriate Order accompanies this Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: September 19, 2024